[No. 44601.    En Banc.    October 20, 1977.]

ARCHIE R. TEAGLE, *Respondent,* v. FISCHER & PORTER COMPANY, *Appellant.*

150

*William H. Mays* and *Joel E. Smith* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for appellant.

*Critchlow, Williams, Ryals & Schuster,* by *David E. Williams,* for respondent.

HAMILTON, J.—This appeal involves a products liability case in which we are asked to review the trial court's granting of partial summary judgment for the respondent (plaintiff).[1] The appeal also concerns the issue of comparative negligence under RCW 4.22.010[2] when the plaintiff's claim is based solely on the theory of strict liability.

The product involved herein is a flowrator, which was purchased by respondent's employer for the purpose of measuring liquids in the production of liquid chemical fertilizers for agricultural use. A flowrator consists of a metal body approximately 1 foot in length with a glass tube running lengthwise through the middle. A float sits inside the glass tube. The liquid to be measured flows through the

---

[1]Respondent, Archie R. Teagle, died during the pendency of this appeal, and his wife, Rose F. Teagle, as administratrix of his estate, was substituted as respondent. When we speak of respondent in this opinion, we are referring to the actions of Archie R. Teagle.

[2]RCW 4.22.010 provides:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages caused by negligence resulting in death or in injury to person or property, but any damages allowed shall be diminished in proportion to the percentage of negligence attributable to the party recovering."

glass tube and the float rises or falls depending on the quantity of the liquid flowing through the glass tube. The glass tube has markings on the outside, and an operator can measure the flow of the liquid by determining where the float is located in relation to the markings on the tube.

Two of the basic elements used in the production of liquid chemical fertilizer are nitrogen and sulphur. The source of nitrogen used by respondent's employer is anhydrous ammonia, a strong alkali. Just prior to the accident, respondent had tested the finished fertilizer product and found the ammonia content was too low. He made a minor adjustment to increase the flow of the anhydrous ammonia, waited about 60 seconds, and then stepped in front of the flowrator to see if the new setting had settled. At that point, the glass tube in the flowrator exploded, sending the anhydrous ammonia into respondent's eyes. One of respondent's treating physicians testified in a deposition that as a result of getting the anhydrous ammonia in his eyes, respondent would more than likely suffer from glaucoma for the rest of his life.

The trial court granted partial summary judgment for respondent on the issues of liability and proximate cause. The court found the flowrator was not reasonably safe, because it did not have a guard attached which would protect operators from an explosion and because appellant did not warn users of the flowrator that protective measures for operators should be taken whenever measuring liquids at pressures above 50 pounds per square inch (p.s.i.).[3] The court also found that this defect in the product was the proximate cause of respondent's injuries.

The case proceeded to a jury trial. The jury found respondent's damages to be $531,000 and also found respondent 1 percent contributorially negligent. The trial court then granted respondent's motion to have the verdict

---

[3]Apparently, operator protection is needed for pressures above 50 p.s.i. because, if the glass tube should break for any reason, the force of the explosion is great enough to cause harm to an operator only when the pressure of the liquid is running above 50 p.s.i.

on contributory negligence set aside and entered judgment for respondent for the full amount of his damages. On appeal, appellant assigns error to the granting of partial summary judgment for respondent and the setting aside of the jury's verdict on respondent's contributory negligence.

■ In considering a motion for summary judgment, the sole consideration is whether the pleadings, affidavits, depositions, and admissions on file show that there is no genuine issue as to any material fact. The trial court must consider all evidence and all reasonable inferences from the evidence in favor of the nonmoving party, and summary judgment should be granted only if reasonable persons could reach only one conclusion. *See Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 523 P.2d 186 (1974); *Preston v. Duncan*, 55 Wn.2d 678, 349 P.2d 605 (1960); *Capitol Hill Methodist Church v. Seattle*, 52 Wn.2d 359, 324 P.2d 1113 (1958). If there are no genuine issues of fact and if respondent is entitled to judgment as a matter of law, the summary judgment must be upheld.

The following facts were before the trial court on respondent's motion for partial summary judgment. The flowrator which exploded was purchased by respondent's employer in 1968 and was installed in the employer's new plant in the spring of 1970. It was rated as being capable of withstanding pressures of 440 p.s.i. up to 200 degrees F. At the time of the explosion, the anhydrous ammonia was running at approximately 175 p.s.i. and 70 degrees F. In March of 1970, appellant began inserting a warning in the instruction booklet which accompanies all flowrators. This warning recommended operator protection be taken when measuring liquids above 50 p.s.i. and recommended the installation of a shield to protect the operator, or the purchase of a different model flowrator which would better protect the operator.[4] Also, in March of 1970, appellant began to place a warning directly on the flowrators which stated that pre-

---

[4]The warning provides:
"WARNING
"Glass metering tubes have been designed to operate up to the maximum

cautionary measures should be taken when measuring liquids above 50 p.s.i. and referred the operator to the instruction booklet. Although appellant knew at the time it sold the flowrator to respondent's employer in 1968 that operator protective measures were needed for pressures above 50 p.s.i., neither of the above warnings accompanied the flowrator which exploded. Appellant's expert witnesses testified that these warnings were not given prior to March of 1970, because it was not the standard of the industry to do so.

Further, at the time respondent's employer purchased the flowrator which exploded, appellant also manufactured a flowrator with a guard which would protect an operator from an explosion when measuring liquids above 50 p.s.i. Although appellant's expert witness did not testify in detail regarding the feasibility of guarding all flowrators, he did testify it was not feasible to guard all flowrators. The evidence also established that only 5 to 10 percent of appellant's customers who purchased flowrators used them to measure liquids above 50 p.s.i.

The facts also established that respondent's employer used O–rings made of a material called Viton in the flowrator which exploded. O–rings are used to seal the open ends of the glass tube at the top and bottom of the flowrator's metal body. At the time it sold the flowrator to respondent's employer, appellant knew that Viton O–rings should not be used when measuring ammonia. After the accident, appellant conducted tests with Viton O–rings and ammonia, and these tests established that the Viton O–rings would harden and disintegrate within a short time after

design working pressures listed herein. This is not to be construed as a certification that the tubes will not break at any pressure. Inherent material limitations can result in tube breakage due to conditions beyond our control. Because breakage at high operating pressures (particularly when metering gases or liquids above their normal boiling points) represents a greater hazard to personnel, *operator protection is recommended for pressures above 50 psig.* A 1/2" thick polycarbonate sheet can be used as a shield or, alternatively a Model 10A1790A Series Meter with a safety enclosure or an all metal meter can be substituted."

coming into contact with ammonia, thereby possibly causing the glass tube to break. Although appellant knew that Viton O–rings were not compatible with ammonia, it did not warn its customers of the dangers of using Viton O–rings when using a flowrator to measure liquid ammonia. The only thing appellant did was to recommend to its distributors that Buna O–rings should be used when measuring ammonia.

The trial court granted summary judgment for respondent, because it determined that the unguarded flowrator was not reasonably safe for those 5 to 10 percent of appellant's customers who measure liquids above 50 p.s.i. without appellant first warning them that they should buy a guarded flowrator or an all–metal flowrator, or take other precautionary steps to protect the operator. We first adopted the strict liability theory of Restatement (Second) of Torts § 402A (1965) in *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969). In *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975), we extended the strict liability theory to products which are defectively designed. We held that liability is imposed under section 402A if a product is not reasonably safe. In analyzing the comments to section 402A and the cases which have interpreted that section, we determined that a product is not reasonably safe when it is unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer.

> This evaluation of the product in terms of the reasonable expectations of the ordinary consumer allows the trier of the fact to take into account the intrinsic nature of the product. . . . It must be borne in mind that we are dealing with a relative, not an absolute concept.
>
> In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the

nature of the product or the nature of the claimed defect may make other factors relevant to the issue.
*Seattle–First Nat'l Bank v. Tabert, supra* at 154.

██ Although *Tabert* was a design defect case, we believe the same analysis is appropriate when dealing with the adequacy of warnings. A product may be faultlessly manufactured and designed, yet still not be reasonably safe when placed in the hands of the ultimate user without first giving an adequate warning concerning the manner in which to safely use the product. *See Haugen v. Minnesota Mining & Mfg. Co.,* 15 Wn. App. 379, 550 P.2d 71 (1976); *Canifax v. Hercules Powder Co.,* 237 Cal. App. 2d 44, 46 Cal. Rptr. 552 (1965); *Rindlisbaker v. Wilson,* 95 Idaho 752, 519 P.2d 421 (1974); *Helicoid Gage Div. of Am. Chain & Cable Co. v. Howell,* 511 S.W.2d 573 (Tex. Civ. App. 1974); Restatement (Second) of Torts § 402A, comments *h* and *j* (1965); 1 R. Hursh & H. Bailey, *American Law of Products Liability* § 4:13 (2d ed. 1974) and 2 R. Hursh & H. Bailey, *American Law of Products Liability* § 8:8 (2d ed. 1974). Thus, the ultimate question in determining whether the trial court correctly granted summary judgment for respondent is whether reasonable persons could only conclude that this unguarded flowrator was not reasonably safe without appellant first giving a warning of the dangers of measuring liquids above 50 p.s.i. and of using Viton O–rings when measuring ammonia.

Here, appellant knew at the time it sold this unguarded flowrator that users could be seriously harmed if the glass tube were to break while measuring liquids above 50 p.s.i. Not only did appellant not warn the user of this danger, or even suggest to the purchaser that a guarded flowrator or an all–metal flowrator should be used when measuring liquids above 50 p.s.i., it rated this flowrator as capable of withstanding pressures of up to 440 p.s.i., far above the highest operating pressure of the liquids respondent's employer was contemplating on measuring.[5] In terms of the reasonable expectations of the ordinary consumer, given the

---

[5] An officer of the corporation which employed respondent testified that the

fact that this flowrator was rated at 440 p.s.i., we believe reasonable persons could only conclude that this unguarded flowrator was not reasonably safe when it was sold without a warning. In addition, appellant knew that Viton O–rings were incompatible with ammonia, yet it did nothing more than recommend the use of Buna O–rings. It did not warn of the dangers which could result from using Viton O–rings with ammonia. The lack of this warning, by itself, would render the flowrator unsafe.

Appellant responds by pointing out that its expert witness testified it was not feasible to guard all flowrators. Be that as it may, it still does not absolve appellant from the duty to warn those users who measure liquids above 50 p.s.i. that they should take precautionary measures or buy a guarded flowrator or an all–metal flowrator, or the duty to warn its customers who measure ammonia that Viton O–rings should not be used.

Appellant next responds that the warnings accompanying its flowrators after March of 1970 were adequate warnings of the dangers of measuring liquids above 50 p.s.i., because respondent's employer had purchased three flowrators after that date which had the warnings affixed to them and which had the warnings in the instruction booklet. Thus, appellant argues, its duty to warn respondent was adequately fulfilled by these later warnings. Alternatively, appellant asserts that the summary judgment for respondent was erroneously granted, because it precluded appellant from arguing to the jury that respondent's employer's negligence in failing to warn respondent after purchasing three flowrators with the warnings was the proximate cause of respondent's injuries. We disagree.

The warnings which accompanied the later acquired flowrators did not state that they were applicable to earlier flowrators. They did not direct the attention of the reader to the dangers of using earlier purchased unguarded

---

plant and the railroad tank cars which contained the liquid chemicals were equipped with pop–off valves which were set to release at 250 p.s.i.

flowrators for measuring liquids above 50 p.s.i. These warnings pertained only to the subsequently purchased flowrators. As a matter of law, these warnings were inadequate. As for the respondent's employer's negligence being the proximate cause of respondent's injuries, we believe under the admitted facts that it cannot be said that any negligence of the employer rose to the dignity of being the sole proximate cause of respondent's injuries. At best, respondent's employer's negligence consisted of failing to perceive that the warnings applied to the earlier purchased flowrator. The trial court did not err in granting partial summary judgment for respondent on the issues of liability and proximate causation.

Turning to the issue of the trial court's order setting aside the jury verdict on plaintiff's contributory negligence, we begin by noting that the Restatement (Second) of Torts provides a general guideline for asserting contributory negligence as a defense in strict liability:

> *n. Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

Restatement (Second) of Torts § 402A, comment *n* (1965). *See Products Liability: Contributory Negligence or Assumption of Risk as Defense Under Doctrine of Strict Liability in Tort,* Annot., 46 A.L.R.3d 240 (1972). Although under comment *n* a plaintiff would be barred from any

recovery if the trier of fact found the plaintiff had voluntarily and unreasonably proceeded to encounter a known danger, the adoption of comparative negligence in this jurisdiction, *see* RCW 4.22.010, renders the plaintiff's conduct a damage–reducing factor only. *See Sun Valley Airlines, Inc. v. AVCO–Lycoming Corp.*, 411 F. Supp. 598 (D. Idaho 1976); *Hagenbuch v. Snap–On Tools Corp.*, 339 F. Supp. 676 (D.N.H. 1972); *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976); *cf. Lyons v. Redding Constr. Co.*, 83 Wn.2d 86, 515 P.2d 821 (1973). Turning to the facts in this case, there was no evidence presented to the jury upon which it could find that respondent knew of any dangers when measuring liquids above 50 p.s.i. or knew that Viton O–rings should not be used when measuring ammonia. The evidence was certainly insufficient to carry to the jury the issue of whether respondent voluntarily and unreasonably proceeded to encounter a known danger.

Appellant contends we should adopt the theory, under comparative negligence, that any negligence on the part of a plaintiff, including failure to use ordinary care in discovering the defect, should be considered by the jury as a damage–reducing factor. This contention has been advocated by some commentators. *See* Schwartz, *Strict Liability and Comparative Negligence*, 42 Tenn. L. Rev. 171 (1974); Brewster, *Comparative Negligence in Strict Liability Cases*, 42 J. Air L. & Com. 107 (1976); Feinberg, *The Applicability of a Comparative Negligence Defense in a Strict Products Liability Suit Based on Section 402A of the Restatement of Torts 2d (Can Oil and Water Mix?)*, 42 Ins. Couns. J. 39 (1975); and Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss. L.J. 825, 850 (1973). It appears that Wisconsin follows this course and allows the defendant to introduce any evidence which would tend to show the plaintiff was contributorially negligent. *See Powers v. Hunt–Wesson Foods, Inc.*, 64 Wis. 2d 532, 219 N.W.2d 393 (1974); *Dippel v. Sciano*, 37 Wis. 2d

443, 155 N.W.2d 55 (1967). We do note, however, the Wisconsin Supreme Court has determined that an action under section 402A of the Restatement is a negligence per se action. In other words, strict liability means negligence as a matter of law which

> shifts the burden of proof from the plaintiff of proving specific acts of negligence to the defendant to prove he was not negligent in any respect. In this respect, the rule in Wisconsin impliedly qualifies the Restatement of *Torts* 2d in sec. 402A, which states the rule of sub. (1) "applies although (a) the seller has exercised all possible care in the preparation and sale of his product." One must read this section as meaning the Restatement rule in sec. 402A (1) is the starting point and is prima facie liability based on negligence but does not foreclose the defendant from proving he was not negligent.

*Powers v. Hunt–Wesson Foods, Inc., supra* at 536. Thus, it is conceptually easier under the Wisconsin court's interpretation of section 402A to permit a defendant to bring in all evidence of the plaintiff's contributory negligence, because the defendant's liability is predicated upon a negligence per se theory. This is not the same theory of strict liability which we have adopted here in Washington. Once the plaintiff has proven the product was not reasonably safe, the defendant is liable in damages and cannot absolve itself by proving lack of negligence. This does not necessarily close the door to our adoption of the theory that any evidence of the plaintiff's contributory negligence should be considered as damage–reducing factors. However, on the facts before us, this case is not the proper one to raise this issue.

From the facts in the record before us, it appears that appellant's sole theory of respondent's contributory negligence was that respondent was not wearing safety glasses at the time of the accident. The jury was instructed that the wearing of protective eye and face equipment is required by a safety regulation where there is a reasonable probability

of injury that can be prevented by such equipment. *See* WAC 296–24–07801.[6] The jury was also instructed that violation of a safety regulation was negligence as a matter of law.[7] The evidence before us is clearly insufficient to carry to the jury the issue of a violation of WAC 296–24–07801. The regulation speaks of probabilities of injury before protective eye equipment is required to be worn. Appellant presented no evidence regarding knowledge by respondent, his fellow employees, or his employer, of a probability of injury when working with flowrators while measuring liquids above 50 p.s.i. Before the issue of a violation of WAC 296–24–07801 could have been given to the jury for consideration, the appellant was at least required to present evidence which would show that the employer or its employees were aware of the probability of injury which would necessitate the wearing of protective eye and face equipment. The trial court correctly set aside the jury verdict on respondent's contributory negligence.

---

[6]Instruction No. 12 provided:

"You are instructed that a safety regulation of the State of Washington states that:

"(1) Protective eye and face equipment shall be required where there is a reasonable probability of injury that can be prevented by such equipment. In such cases, employers shall make conveniently available a type of protector suitable for the work to be performed, and employees shall use such protectors. No unprotected person shall knowingly be subjected to hazardous environmental condition. Suitable eye protectors shall be provided where machines or operations present the hazard of flying objects, glare, liquids, injurious radiation, or a combination of these hazards.

"(2) Protectors shall:

"(a) Provide adequate protection against the particular hazards for which they are designed.

"(b) Be reasonably comfortable when worn under the designated conditions.

"(c) Fit snugly and shall not unduly interfere with the movements of the wearer."

[7]Instruction No. 13 provided:

"The violation, if you find any, of a safety regulation is negligence as a matter of law. Such negligence has the same effect as any other act of negligence. Therefore, it will not diminish the recovery on the part of the plaintiff claiming injury or damage unless you further find that it was a proximate cause of the claimed injury or damage."

The judgment of the Superior Court is affirmed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACH-TENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.