[No. 45629.   En Banc.   May 10, 1979.]

DARLENE LITTLE, *as Administratrix, Respondent,* v. PPG INDUSTRIES, INC., *Petitioner.*

---

*Fred T. Smart, Patrick J. Clarke, John F. Biehl,* and *Lee, Smart, Cook, Biehl & Martin, P.S., Inc.,* for petitioner.

*Robert V. Brown, Lawrence B. Linville,* and *Clinton, Fleck, Glein & Brown,* for respondent.

ROSELLINI, J.—This wrongful death action was brought by the widow of an employee of Bethlehem Steel Company who died while allegedly using a cleaning solvent manufactured by the defendant. The jury returned a verdict for the defendant. The Court of Appeals, Division Two, ordered a new trial, and we granted a petition for review of its decision.

The facts of the case are set forth in the opinion in 19 Wn. App. 812, 579 P.2d 940 (1978), and need not be repeated here. The plaintiff sought recovery upon theories of negligence and strict liability based upon the alleged failure to give adequate warning of the dangers involved in the use of the solvent. The Court of Appeals held that, while the Superior Court had given a jury instruction (requested by the plaintiff) which was substantially a correct statement of the plaintiff's theory of strict liability, it effectively removed that theory from the jury's consideration when it submitted interrogatories which spoke only of negligence. It also found error in refusing certain instructions requested by the plaintiff. On the defendant's cross appeal, it held that the Superior Court erred in refusing to submit the question of intervening cause to the jury. It was ordered that upon a new trial, the issue of the defendant's negligence should not be submitted to the jury. With some modification, we affirm the decision of the Court of Appeals.

It appears that the Superior Court, after considering the briefs and authorities submitted by the parties, concluded that negligence is an essential element in an action based on failure to warn, even though there is also an element of strict liability, that element being found in the manufacturer's presumed knowledge of the dangerous properties of his product.

The rule of strict liability for unreasonably dangerous products, embodied in the Restatement (Second) of Torts § 402A (1965) and approved as the law in this jurisdiction with respect to defective products, focuses attention upon the product, rather than upon the conduct of the supplier of the product. The rule, as formulated in the Restatement, speaks of products which are in a "defective condition." In comment *h,* it is said that where a defendant has "reason to anticipate that danger may result from a particular use" of his product and he fails to give adequate warning of such a danger, "a product sold without such warning is in a defective condition." This statement is open to question.

First, it is inaccurate to speak of a properly manufactured but necessarily dangerous product as being in a "defective" condition. As students of the Restatement have observed, it is more appropriate to describe an article bearing an inadequate warning as "unreasonably dangerous," than as "defective." *See* J. Montgomery & D. Owen, *Reflections on the Theory and Administration of Strict Tort Liability for Defective Products*, 27 S.C. L. Rev. 803, 819 *et seq.* (1976), and the annotation at 53 A.L.R.3d 239 (1973). The drafters of the Restatement do characterize the product in this manner in comment *j*, where they say that "[i]n order to prevent the product from being unreasonably dangerous [even though faultlessly made], the seller may be required to give directions or warning, on the container, as to its use." A second objection to comment *h* is that it imposes a negligence concept upon the doctrine of strict liability.

The drafters of section 402A do not attempt to elaborate upon the supplier's duty with respect to warnings, and this omission has led to some speculation as to their intent. Because of the language in comment *j,* and because the Restatement treats the duty to warn in another section, 388, and that section spells out the duty in terms of negligence, it has been suggested that section 388 should be read into section 402A by implication. *See* Annot., 53 A.L.R.3d at 246 (1973). As the annotation reveals, a number of courts have focused attention upon the supplier, making the reasonableness of his conduct the controlling consideration.

We think, however, that the objective of the rule of strict liability with respect to dangerous products is defeated if a plaintiff is required to prove that the defendant was negligent, or the latter is allowed to defend upon the ground that he was free of negligence. It is the adequacy of the warning which is given, or the necessity of such a warning, which must command the jury's attention, not the defendant's conduct.

While we agree with the defendant's contention that the rule of reasonableness has a role to play in products

liability cases, it is a role which concerns itself with the sufficiency of the warning and the expectations of the user. The question is, Was the warning sufficient to catch the attention of persons who could be expected to use the product; to apprise them of its dangers and to advise them of the measures to take to avoid those dangers?

It is, of course, difficult to separate the concept of an "inadequate warning" from that of a "negligent supplier." If one is proven, the other generally can be inferred. However, this is not necessarily so, and proof of an inadequate warning will usually be a much simpler task for the plaintiff than proof of negligence on the part of the defendant, since the evidence upon that question is more accessible. It is also a question upon which common knowledge often has some bearing, in which case the jury can draw upon this source in making its decision.

In our own cases involving warnings with respect to dangerous products, the focus has been upon the warning itself and the reasonable expectations of the user, rather than upon the conduct of the defendant. In *Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 570 P.2d 438 (1977), a case decided under the strict liability theory of section 402A, we held that the adequacy of a warning should be determined in the light of the same principles which we had applied in a case involving defective design. In that case, *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975), we held that a product is not reasonably safe when it is unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer. We said:

> This evaluation of the product in terms of the reasonable expectations of the ordinary consumer allows the trier of the fact to take into account the intrinsic nature of the product. The purchaser of a Volkswagen cannot reasonably expect the same degree of safety as would the buyer of the much more expensive Cadillac. It must be borne in mind that we are dealing with a relative, not an absolute concept.

In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.

In *Haysom v. Coleman Lantern Co.,* 89 Wn.2d 474, 573 P.2d 785 (1978), we treated a number of assignments of error, relating them to the issue of adequacy of warning, as opposed to negligence of the defendant. In that case, we said that a warning need not be given at all in instances where a danger is obvious or known;[1] that in some cases, where a defect is latent, the court may declare as a matter of law that an adequate warning was not given, but that in most cases the question is one for the jury. *Haugen v. Minnesota Mining & Mfg. Co.,* 15 Wn. App. 379, 388, 550 P.2d 71 (1976), likewise makes the adequacy of the warning the controlling consideration.

In its instructions Nos. 13 and 14,[2] which had been requested by the plaintiff, the court advised the jury of the

---

[1] We note that by way of dictum the majority opinion in the Court of Appeals takes issue with a statement found in *Haysom v. Coleman Lantern Co.,* 89 Wn.2d 474, 573 P.2d 785 (1978), to the effect that warnings are not necessary in the case of obvious or known dangers. Until its correctness is successfully challenged in a case before the court, we adhere to that statement.

[2] Instruction No. 13:

"A manufacturer of a product must give warning of any dangerous propensities of a product manufactured or sold by him, which are inherent in the product or its use and which the user of the product would not ordinarily discover.

"The warning should be such that, if followed, would make the product safe for users.

"To fulfill this duty, the manufacturer has two obligations. First, he must appropriately label the product in such form that it could be reasonably expected to catch the attention of the user in the circumstances of its use and be of such a nature as to be reasonably comprehensible to the average user. Secondly, the manufacturer must appropriately label the product, giving due consideration to the seriousness of consequences from failure to so label it as to warn of any dangers that are inherent in its use or that may arise from the improper handling or use of the product."

duty to warn of the dangers involved in the use of a product. While the instructions did not specifically mention the duty to furnish directions for avoiding the danger, such a duty was implicit in the statement that the warning "should be such that, if followed, would make the product safe for users." Instruction No. 13 speaks in terms of the manufacturer's duty, but its focus is upon the product, the warning, and the user. The law could be more clearly stated. However, the instructions together adequately convey the plaintiff's theory and do so better than any other instruction which she proposed.

The Superior Court correctly refused the plaintiff's requested instruction which was couched in the language of the Restatement, since that instruction confuses the issue by describing the product as "defective."[3] However, the plaintiff's unnumbered instruction defining her burden of proof[4] was a correct statement of law which would have

---

Instruction No. 14:

"A manufacturer of a product is under a duty to test, analyze and inspect his product and is charged with knowing what such tests would have revealed.

[3] "One who manufactures a product in a defective condition unreasonably dangerous to the user or consumer is subject to liability for physical harm thereby caused to the ultimate user or consumer, if

"(a) the manufacturer is engaged in the business of making such a product, and

"(b) is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"The rule stated above applies although

"(a) the manufacturer has exercised all possible care in the preparation and sale of his product and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

[4] "The plaintiff has the burden of proving the following propositions:

"First, that the defendant failed sufficiently to warn of the dangers inherent in its product and that thereby the product was rendered unreasonably dangerous;

"Second, that plaintiff suffered damages;

"Third, that the defendant's failure sufficiently to warn of the dangers was a proximate cause of the plaintiff's damages.

"If you find from your consideration of all the evidence that each of these propositions [has] been proved, your verdict should be for the plaintiff. On the

drawn the issue of adequacy of warning to the jury's attention. This instruction should have been given.

The Superior Court's concept of negligence as a necessary element in a warnings case, even where the doctrine of strict liability is asserted, is reflected in the instructions which it gave the jury. While an instruction defining the manufacturer's duty to warn was given, the only instruction apprising the jury of the plaintiff's contentions was instruction No. 4, which stated that the plaintiff claimed that the defendant was negligent and that its conduct was a proximate cause of the death of Robert Little. Negligence was given its standard definition in the court's instruction No. 7.

The isolation of negligence as the sole issue before the jury was completed by the interrogatories submitted to the jury, which simply asked whether the defendant was negligent and made no mention of adequacy of warnings. We are aware that this instruction was requested by the plaintiff, but the request was made with a reservation of her objections to the removal of the theory of strict liability from the jury's consideration. The court having taken the view that this doctrine could not be divorced from a theory of negligence, it was obvious that if interrogatories were to be submitted, they would have to be couched in those terms. Under those circumstances, the plaintiff cannot be precluded from objecting to the court's denial of her request to have the other theory submitted.

Since the case went to the jury in this posture, the Court of Appeals correctly concluded that the theory of strict liability was effectively removed from its consideration, to the plaintiff's prejudice. There was evidence upon which the jury could have found that, in spite of the lack of proof of negligence on the part of the defendant, the warning which it placed upon its containers was inadequate to apprise the

---

other hand, if any of these propositions has not been proved, your verdict should be for the defendant."

user of its dangers. That evidence is set forth in the opinion of the Court of Appeals.

In ordering a new trial, the Court of Appeals held that the issue of negligence of the defendant[5] should be removed from the jury's consideration. The theory upon which this determination was based appears to have been that an attempt to prove both negligence and inadequacy of warning may tend to confuse the jury, to the disadvantage of the plaintiff. Having in mind that it is generally the prerogative of the parties to determine their own trial strategy, we prefer to rest our concurrence in the holding upon another and, we believe, firmer ground. The issue of the negligence of the defendant has been fully litigated and presented to the jury under proper instructions. No reason has been shown to disturb the verdict with respect to that question, and since the issue of strict liability does not involve proof of negligence of the defendant, there is no occasion to retry the issue.

On the defendant's cross appeal, the Court of Appeals held that its evidence with respect to the employer's conduct as an intervening cause of the plaintiff's damages was sufficient to entitle the defendant to instructions upon that theory. No reason has been offered in this court to reverse that holding, and we leave it undisturbed.

As modified herein, the decision of the Court of Appeals ordering a new trial is affirmed.

STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

UTTER, C.J. (concurring)—I concur in the opinion of the majority.

---

[5]Negligence of the deceased was also an issue in the case, and nothing that is said in this opinion is intended to affect the defense of contributory negligence. That such a defense may be asserted in a strict liability case, see *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 157 *et seq.*, 570 P.2d 438 (1977).

Petitioner contends first that some "reasonable person" standard must inhere in the trial of a claim alleging failure to adequately warn of a product's dangerous potential, and second, that proof of negligence is therefore indispensable to the cause of action. While the first assumption is correct, the second does not follow from it.

Dean W. Page Keeton has articulated the applicable standard in the following manner:

> a product is unreasonably dangerous at the time of sale if the ordinary man, knowing the risks and dangers actually involved in its use, would not have marketed the product without supplying more information about the risks and dangers involved in its use and ways to avoid harm therefrom.

Keeton, *Products Liability—Inadequacy of Information,* 48 Tex. L. Rev. 398, 403–04 (1970). *See also,* the comparable formulation in Wade, *On the Nature of Strict Tort Liability for Products,* 44 Miss. L.J. 825, 839–40 (1973); and Twerski, Weinstein, Donaher & Piehler, *The Use and Abuse of Warnings in Products Liability—Design Defect Litigation Comes of Age,* 61 Cornell L. Rev. 495, 511–12 n.45 (1976).

Reasonableness is an implicit attribute of the "ordinary" person postulated by Dean Keeton. It is explicit in the formulations of the other commentators. But under no formulation is this reasonable person assumed to be the actual manufacturer or supplier appearing as defendant in the product liability suit. As is apparent in the standard, the reasonable person, like the jury itself, is posited to know the risks inherent in distribution of the product without sufficient warning, as well as the costs and effects of providing such a warning. There is no issue as to negligence on the part of the hypothetical reasonable person.

As the majority holds, the jury focuses its attention on the product itself and the dangers inherent in its condition

and manner of distribution. The postulated reasonable person is merely a vehicle to objectify the jury's own judgment regarding the product as placed in the stream of commerce.

Horowitz, J., concurs with Utter, C.J.