[No. 7561-3-III.   Division Three.   July 9, 1987.]

STEVE ANDERSON, *Appellant,* v. DREIS & KRUMP MANUFACTURING CORPORATION, *Respondent.*

R. *Bruce Owens* and *Howard & Owens,* for appellant.

*Frederic G. Fancher* and *Richter–Wimberley, P.S.,* for respondent.

MUNSON, J.—Steve Anderson brought this products liability action to recover damages for personal injuries received while operating a Chicago Press Brake (press) manufactured by Dreis & Krump Manufacturing Corporation. Mr. Anderson alleged Dreis was liable under theories of breach of warranty, negligence, and strict liability. The trial court entered summary judgment for Dreis, dismissing the action. On appeal, Mr. Anderson's numerous assignments of error may be reduced to four basic issues; these are whether: (1) the breach of warranty claims were properly dismissed for lack of privity; (2) the warnings on the press were inadequate; (3) the press was defectively designed; and (4) modification of the press' activating system after the press left Dreis' control was the sole proximate cause of Mr. Anderson's injury. We remand for trial.

Mr. Anderson was injured on July 3, 1979,[1] while operating a press owned by his employer, Comet Corporation. The press was manufactured by Dreis, an Illinois corporation in the business of designing and manufacturing such industrial equipment. Dreis sold the press to Niblock Machine, Inc., a distributor who, in turn, sold the press to Comet. Comet installed the press in its Spokane facility. Neither Comet nor Niblock is a party to this action.

A detailed description of the press is necessary for an understanding of our ruling. It was designed as a general purpose or "multifunctional" press, capable of performing a variety of functions. Comet used the press for corrugating metal.[2] During operation, the press' "ram," or vertically

---

[1]The provisions of RCW 7.72 (relating to product liability actions) are inapplicable; this injury occurred prior to the effective date of that chapter, *i.e.,* July 26, 1981. *See Gates v. Standard Brands, Inc.,* 43 Wn. App. 520, 719 P.2d 130, *review denied,* 106 Wn.2d 1017 (1986).

[2]As utilized by Comet, sheets of aluminum, approximately 100 inches long, were fed into the press from the back of the press moving through the point of operation toward the operator.

movable upper section, would descend upon the "bed" or lower section. Shaping tools or "dies" are attached to the ram as well as the bed. When the ram descends, the metal is bent into the desired shape by the upper die pressing the metal against the lower die. The area between the ram die and the bed die is referred to as the "point of operation."

The press, as originally designed, manufactured, and sold to Comet, could be activated by either of two means: the first was a 2–button control located at shoulder level above the ram. These buttons had to be pressed simultaneously, using both hands, to start the press, causing the ram to descend. The 2–button system was also the press' principal safety feature because the operator's hands were on the buttons, and thus prevented from entering the point of operation when the ram descended. The second means of activation was by depressing a foot treadle connected to a rod which ran along the base of the press. The treadle's position could be moved right and left along the length of the press to accommodate the position of the operator. This movement allowed the treadle to be positioned so the operator was within arm's reach of the point of operation. Accidental depression of the treadle could be prevented by engaging a "treadle lock"; however, that device apparently was not automatic, but rather had to be manually engaged. Dreis provided no accompanying safety device to prevent the operator's hands from entering the point of operation when the press was activated by the treadle. The operator could choose either the 2–button control or the treadle by flipping a lever on the side of the press.

When the press was delivered, Comet received safety and operator manuals provided by Dreis, instructing prospective operators how to use the press safely. One of these safety manuals instructed purchasers never to eliminate or bypass any safety device installed on the press. Moreover, that manual requested purchasers to contact Dreis with respect to the continued use of the press after any modification.

436

Additionally, Dreis attached the following warning sign to the front of the press near the point of operation:

**WARNING**

**TO PREVENT SERIOUS BODILY INJURY**

**NEVER** PLACE ANY PART OF YOUR BODY UNDER THE RAM OR WITHIN THE DIE AREA.

**NEVER** OPERATE, INSTALL DIES, OR MAINTAIN THIS MACHINE WITHOUT PROPER INSTRUCTION AND WITHOUT FIRST READING AND UNDERSTANDING THE OPERATORS OR MACHINE MANUAL.

**NEVER** INSTALL DIES OR SERVICE THIS MACHINE WITH THE FLYWHEEL IN MOTION AND/OR MOTOR ON.

IT IS THE EMPLOYERS RESPONSIBILITY TO IMPLEMENT THE ABOVE AND ALSO TO PROVIDE PROPER DIES, DEVICES OR MEANS THAT MAY BE NECESSARY OR REQUIRED FOR ANY PARTICULAR USE, OPERATION, SET-UP OR SERVICE.

DO NOT REMOVE THIS SIGN OR MANUAL FROM THIS MACHINE       PPS-I  C

When delivered, the 2–button device was the operational activation system. Thereafter, Comet disconnected that control and rewired the press so that it could be activated by pushing a single button attached to the end of a long, flexible electric cord. This flexible cord, like the adjustable treadle, allowed the operator to move along the length of the press' bed. Because this method of activation required the use of only one hand, the operator's other hand was left free to enter the dangerous point of operation.

After modifying the activation system, Comet did not install "point–of–operation" guards.[3] Comet was aware of

---

[3]The record indicates that several types of point–of–operation guards were available, including: (a) barrier guards, and (b) "light curtains." Either of these guards would have prevented the press from cycling while the operator's hands were in the point–of–operation area.

the danger to operators from use of the unguarded press and discussed these dangers at company meetings prior to the accident. Additionally, the Washington State Department of Labor and Industries inspected the press prior to the accident and found the press to be unsafe. Although not clear from the record, Dreis contends Comet was fined for lack of point–of–operation safety devices on the press.

This accident occurred when Mr. Anderson reached into the point–of–operation area to brush away small circles of aluminum that had accumulated during the stamping process. He was leaning into the die area when his stomach accidently hit the single button activator, the cord of which had been laid nearby. As a result, the ram cycled downward, severely injuring one of his hands.

In moving for summary judgment, Dreis argued: (1) the press was not defective as manufactured and sold since the press included the 2–button (activator) safety feature; (2) adequate warnings were attached to and accompanied the press when it was sold; and (3) Comet's modification of the activation system was the superseding cause of Mr. Anderson's injury.

In response, Mr. Anderson argued the press was designed to be used with the treadle activator. Because use of the treadle allowed the operator to place his hands within the point–of–operation area, the press should have included corresponding point–of–operation or barrier–type guards. He asserted the single button activator, though a modification, did not cut off Dreis' liability because that activation method was no more dangerous than the foot treadle, and the kind of harm which occurred, i.e., accidental injury to hands, was no different than the kind of harm which would have occurred if the treadle had been used.

Mr. Anderson's arguments were supported by three experts familiar with this type of industrial equipment. These experts stated the press was defectively designed

because of lack of point–of–operation guards and inadequate warnings. The Superior Court granted summary judgment, dismissing the action, primarily because of Comet's modification; Mr. Anderson appeals. Additional facts will be incorporated below as necessary.

## A
### BREACH OF WARRANTY

■ Mr. Anderson initially contends the court erred in dismissing his claims for breach of express and implied warranty for lack of privity. His assertion is not well taken. The press was sold by Dreis to Niblock; Niblock sold to Comet who, in turn, employed Mr. Anderson. Because contractual privity does not exist between Mr. Anderson and Dreis, the court properly dismissed the breach of warranty action. RCW 62A.2–318; *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 151, 727 P.2d 655 (1986).

## B
### DUTY TO WARN

Mr. Anderson next contends the court erred in dismissing his strict liability and negligence claims relating to Dreis' duty to warn operators of the serious harm possibly resulting from hands or other body parts being placed in the die area. He argues the warnings, as given, inadequately informed Mr. Anderson of the full extent of the dangers associated with the press. He maintains his experts' affidavits raise genuine issues of material fact as to the adequacy of the warnings. We disagree.

■ Under strict liability, a product may be found defective, though faultlessly designed and manufactured, if it is not reasonably safe when placed in the hands of the ultimate operator by the manufacturer because of the manufacturer's failure to provide adequate warnings on how to use the product safely. *Baughn,* at 137; *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 155, 570 P.2d 438 (1977). Likewise, a manufacturer may be negligent for failure to provide adequate warnings with respect to dangers involved in a product's use which are, or should be, known to the manu-

facturer. *Baughn,* at 137; Restatement (Second) of Torts § 388 (1965). However, under either theory, no warning need be given where the danger is obvious or known to the operator. *Baughn,* at 138–39, 140; *Mele v. Turner,* 106 Wn.2d 73, 78–80, 720 P.2d 787 (1986). *See* Restatement (Second) of Torts §§ 388, comment *k,* 402A, comment *j* (1965).

Two of Mr. Anderson's experts state the warnings attached to the press and in the manuals accompanying the press at the time of delivery were inadequate because they failed to inform the operator of the consequences of placing a hand or other body part within the point–of–operation area. We agree the warnings in the maintenance and safety manuals sent to Comet along with the press had little efficacy with respect to Mr. Anderson; there is no indication he saw those manuals. *See Balido v. Improved Mach., Inc.,* 29 Cal. App. 3d 633, 105 Cal. Rptr. 890, 899 (1972). Nonetheless, the warning attached to the machine was, by itself, sufficient to "catch the attention of persons who could be expected to use the product [and] apprise them of its dangers and . . . advise them of the measures to take to avoid those dangers" (footnote omitted). *Baughn,* at 139. The warning's contents, combined with the obviousness of the press' dangerous characteristics, indicate that any reasonable operator would have recognized the consequences of placing one's hands in the point–of–operation area. *See Plante v. Hobart Corp.,* 771 F.2d 617, 620 (1st Cir. 1985). Dreis satisfied its duty to warn under both negligence and strict liability theories; the court did not err in granting summary judgment on those issues.

## C
### DESIGN DEFECT

Mr. Anderson next contends the court erred in not permitting a jury to decide whether the press was reasonably safe as designed under theories of strict liability and negligence. We agree. A manufacturer is required under both strict liability and negligence principles to design and produce a reasonably safe product. *Seattle–First Nat'l*

*Bank v. Tabert,* 86 Wn.2d 145, 149, 154, 542 P.2d 774 (1975) (applying strict liability principles); Restatement (Second) of Torts § 395 & comment *k* (1965); *Reusch v. Ford Motor Co.,* 196 Wash. 213, 218, 82 P.2d 556 (1938) (applying negligence principles). In *Capasso v. Minster Mach. Co.,* 532 F.2d 952, 954–55 (3d Cir. 1976) on facts similar to those here, the court held:

> Although the press was designed with a hand control safety feature, the adequacy of which is not challenged, it was also designed to permit operation by use of a foot control. Moreover, a device to permit such operation was a part of the original purchase order. Nevertheless, Minster provided no comparable safety device to prevent the operator's hands from becoming entangled in the operation area when the machine was operated by the foot switch. Given the testimony of plaintiff's experts, we think the issue of a defect in the press at the delivery date was for the jury, other defenses apart . . .

■ We find the *Capasso* court's reasoning persuasive and likewise agree that whether (1) the press was defective because it lacked point–of–operation guards and/or (2) Dreis negligently failed to design a reasonably safe press given the lack of guards both are questions properly resolved by a jury. Dreis contends, however, its installation of point–of–operation guards or other safety devices, such as interlocks, was not feasible because installation of those devices on the multipurpose press would have unduly restricted the myriad uses for which the press was designed. We are not persuaded.

First, Dreis presented no evidence demonstrating that barrier guards or interlock devices would actually have interfered with the press operation *as used here.* Second, a manufacturer cannot delegate to the buyer its responsibility to equip an otherwise dangerous machine with safety guards. *Parkins v. Van Doren Sales, Inc.,* 45 Wn. App. 19, 29, 724 P.2d 389 (1986); *see also Pust v. Union Supply Co.,* 38 Colo. App. 435, 561 P.2d 355, 359–60 (1976), *aff'd,* 196 Colo. 162, 583 P.2d 276, 2 A.L.R.4th 245 (1978); *Scott v. Dreis & Krump Mfg. Co.,* 26 Ill. App. 3d 971, 326 N.E.2d

74, 85 (1975); *Balido,* 105 Cal. Rptr. at 899; *Bexiga v. Havir Mfg. Corp.,* 60 N.J. 402, 290 A.2d 281, 286 (1972); *Finnegan v. Havir Mfg. Corp.,* 60 N.J. 413, 290 A.2d 286, 291–92 (1972). *But see Gordon v. Niagara Mach. & Tool Works,* 574 F.2d 1182, 1190 (5th Cir. 1978). We conclude whether the press was defective and/or Dreis negligent in designing and selling a press without point–of–operation safety devices are questions of fact for the jury.[4]

## D
### EMPLOYER'S MODIFICATION

The court held Comet's modification from the 2–button device to the single button switch was the superseding cause of Mr. Anderson's injury thereby relieving Dreis of liability as a matter of law. Consequently, the crucial issue is whether the trial court was correct in passing on superseding cause as a matter of law or whether a jury should do so as a matter of fact.

Proximate cause is an essential element of both negligence and products liability theories; it consists of two elements: (1) factual or "but for" causation and (2) legal causation. *Baughn,* at 142; *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Factual causation is established between a defendant's act and a subsequent injury only where it can be said the injury would not have occurred "but for" the defendant's act. W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Torts* § 42, at 273 (5th ed. 1984). As noted in *Baughn,* at 142: "Cause in fact refers to the . . . physical connection between an act and an injury." The existence of factual causation is generally a question of fact for the jury. *Baughn,* at 142. Dreis does not question the existence of

---

[4]*Gasdiel v. Federal Press Co.,* 78 Ill. App. 3d 222, 396 N.E.2d 1241 (1979), *Coleman v. Verson Allsteel Press Co.,* 64 Ill. App. 3d 974, 382 N.E.2d 36 (1978), and *Robinson v. Reed–Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 403 N.E.2d 440, 426 N.Y.S.2d 717 (1980) cited by Dreis on this issue are distinguishable; in those cases, the plaintiffs were unable to present sufficient facts demonstrating that a question of fact existed as to whether the presses were defective at the time they left the manufacturers' control.

factual causation here.

Assuming Dreis' failure to equip the press with point–of–operation guards can be said to be a factual cause of Mr. Anderson's injury, such a determination does not necessarily lead to the conclusion Dreis' failure was also the legal cause of the injury. W. Keeton, D. Dobbs, R. Keeton, & D. Owen, at 272–73. Unlike factual causation, legal causation "hinges on principles of responsibility, not physics", *Van Buskirk v. Carey Can. Mines, Ltd.*, 760 F.2d 481, 492· (3d Cir. 1985), and the determination of legal causation rests on policy considerations as to how far the legal consequences of a defendant's act should extend. *Baughn,* at 146. Consequently, the existence of legal causation between two events is determined "on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent." W. Prosser, *Torts* § 42, at 249 (4th ed. 1971) (quoting 1 T. Street, *Foundations of Legal Liability* 110 (1906)).

█ The doctrine of superseding cause, however, limits the situations in which legal causation can be held to exist between two events. The doctrine applies where the act of a third party intervenes between the defendant's original conduct and the plaintiff's injury such that the defendant may no longer be deemed responsible for the injury. *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 813, 733 P.2d 969 (1987); Restatement (Second) of Torts § 440 (1965). Superseding cause thus prevents a determination of legal causation between a defendant's actions and a plaintiff's injuries where the intervening act breaks the otherwise natural and continuous causal connection between events. *See Pratt v. Thomas,* 80 Wn.2d 117, 119, 491 P.2d 1285 (1971).

Whether an act may be considered a superseding cause sufficient to relieve a defendant of liability depends on whether the intervening act can reasonably be foreseen by the defendant; only intervening acts which are *not* reasonably foreseeable are deemed superseding causes. *Campbell,*

at 813 (and cases cited therein).[5] The foreseeability of an intervening act, unlike the determination of legal cause in general, is ordinarily a question of fact for the jury. *Kennett v. Yates,* 41 Wn.2d 558, 564–65, 250 P.2d 962 (1952); *see also Petersen v. State,* 100 Wn.2d 421, 435–36, 671 P.2d 230 (1983); W. Kimble & R. Lesher, *Products Liability* § 251, at 276 (1979 & Supp. 1985). However, foreseeability is a flexible concept, and a defendant will not be relieved of responsibility simply because the exact manner in which the injury occurred could not be anticipated. *Rikstad v. Holmberg,* 76 Wn.2d 265, 269, 456 P.2d 355 (1969); *Smith v. Acme Paving Co.,* 16 Wn. App. 389, 396, 558 P.2d 811 (1976). *Rikstad,* at 269 (quoting *McLeod v. Grant Cy. Sch. Dist. 128,* 42 Wn.2d 316, 321–22, 255 P.2d 360 (1953)) provides:

> It is not, however, the unusualness of the [intervening] act that resulted in injury to plaintiff that is the test of foreseeability, but whether the result of the act is within the ambit of the hazards covered by the duty imposed upon defendant.
>
> . . .
>
> . . .
>
> . . . It is literally true that there is no liability for damage that falls entirely outside the general threat of harm which made the conduct of the actor negligent. The sequence of events, of course, need not be foreseeable. *The manner in which the risk culminates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct. And yet, if the harm suffered falls within the general danger area, there may be liability, provided other requisites of legal causation are present.*

(Italics ours.)[6] *See also* W. Keeton, D. Dobbs, R. Keeton, &

---

[5]*See* Restatement (Second) of Torts § 440 (1965) which provides other considerations useful in determining whether an intervening act constitutes a superseding cause.

[6]Likewise, Restatement (Second) of Torts § 442B, comment *a* (1965) provides "that the fact that the [original] actor neither foresaw nor could have foreseen the

D. Owen, at 316. In this context our Supreme Court has held that generally an intervening act is not a superseding cause where the intervening act (1) does not bring about a different type of harm than otherwise would have resulted from the defendant's conduct; and (2) does not operate independently of the situation created by the defendant's conduct. *Campbell,* at 813–14; *Herberg v. Swartz,* 89 Wn.2d 916, 927–28, 578 P.2d 17 (1978); Restatement (Second) of Torts §§ 442–445 (1965). The above principles are equally applicable to negligence and strict products liability theories. *Campbell,* at 814.

Dreis primarily contends Comet's deactivation of the 2–button device and installation of an alternative activation system destroyed the efficacy of the press' safety features. Dreis maintains, and the court found, the deactivation of this safety feature was unforeseeable and constituted a superseding cause of the accident as a matter of law. We disagree.

Contrary to Dreis' argument, a jury could find it was reasonably foreseeable to Dreis that a purchaser of the press would choose an alternative method of activation given the press' myriad uses, *see Jiminez v. Dreis & Krump Mfg. Co.,* 736 F.2d 51 (2d Cir. 1984), and because an alternative activation system, *i.e.,* the treadle, was designed into the press and delivered with it to Comet. Obviously, use of an alternative activation method, such as the treadle, rendered the 2–button activation system superfluous and its safety features ineffective since the press operator's hands were no longer occupied.

We are cognizant that the activation method chosen by

---

manner in which a particular harm is brought about does not prevent his liability . . ." Comment *b* to that section continues:

>  If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, *it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate.*

(Italics ours.)

Comet was not originally designed into the press by Dreis and thus the precise manner in which this accident occurred may not have been foreseeable to Dreis. *See Rikstad,* at 269; Restatement (Second) of Torts § 442B, comments *a, b* (1965). However, the single button switch, like the treadle, foreseeably allowed the press to be accidently activated while the operator's free hands were in the unguarded point–of–operation area. Under these circumstances, a jury could find the accidental activation of the press, while Mr. Anderson's hand was in the die area, was within the foreseeable scope of danger created by Dreis' failure to incorporate guards around the point–of–operation area. In the absence of any evidence that Comet's modification enhanced the danger of accidental activation above that found in the treadle,[7] we decline to hold that Comet's modification constitutes a superseding cause as a matter of law. *Accord, Jiminez,* at 55; *Merriweather v. E.W. Bliss Co.,* 636 F.2d 42, 44–45 (3d Cir. 1980); *Dennis v. Ford Motor Co.,* 471 F.2d 733, 735 (3d Cir. 1973); *Hales v. Green Colonial, Inc.,* 490 F.2d 1015, 1020–21 (8th Cir. 1974); *Capasso v. Minster Mach. Co., supra; Dorsey v. Yoder Co.,*

---

[7]*Cf. Hanlon v. Cyril Bath Co.,* 541 F.2d 343, 345 (3d Cir. 1975). In *Hanlon,* the plaintiff's employer modified the press activation mechanism from a treadle which required 65 pounds of downward pressure before activation to an electric switch at the end of a flexible cable. The court, at page 346, held this modification caused the accident, stating:

> Clearly, the substitution of the easily depressed mobile electrical foot switch for the original fixed elevated mechanical treadle that was responsive only to some 65 pounds of downward pressure removed a safeguard against accidental activation that had been incorporated in the original structural design and would have been adequate to prevent this accident.

Here, however, no evidence was presented indicating the necessary pressure needed to depress the foot treadle. In fact, there is no evidence comparing the respective risks of accidental activation created by these two activation methods. An affidavit of one of Mr. Anderson's experts provides "the thumb operated control provided a safer control for the intended [activation] function than would a foot activator." Because this court is required to consider the pleadings, depositions, admissions, and affidavits in the light most favorable to the nonmoving party, *Turngren v. King Cy.,* 104 Wn.2d 293, 312, 705 P.2d 258 (1985), we conclude on the facts before the trial court that the modification did not unforeseeably increase the risk of accidental activation as a matter of law.

331 F. Supp. 753, 764 (E.D. Pa. 1971), *aff'd sub nom. Yoder Co. v. General Copper & Brass Co.*, 474 F.2d 1339 (3d Cir. 1973); *Balido v. Improved Mach., Inc.*, 29 Cal. App. 3d 633, 105 Cal. Rptr. 890, 901 (1972).

Two additional considerations bolster our conclusion that a jury should properly determine whether Comet's alteration of the press was a superseding cause of Mr. Anderson's injury. First, the modification did not result in a different type of harm than otherwise would have occurred from Dreis' failure to supply point–of–operation guards with the press. The harm caused by this deficiency, *i.e.*, injury to hands or other body parts, remained the same regardless of the alternative activation method chosen. Second, the intervening modification cannot be said to have operated independently from Dreis' failure to equip the press with guards. Rather, if the guards had been present, Mr. Anderson's hand could not have entered the die area while the press cycled, no matter which activation method was employed. *See Rhoads v. Service Mach. Co.*, 329 F. Supp. 367, 377 (E.D. Ark. 1971). Thus, a jury could determine that Comet's intervening alteration, rather than superseding Dreis' failure to supply guards, instead concurred with that failure to bring about the harm. As *Smith v. Acme Paving Co., supra* at 396, notes:

> There may, of course, be more than one proximate cause of an injury, and the concurring negligence of a third party does not necessarily break the causal chain from original negligence to final injury. Where a defendant's original negligence continues, and contributes to the injury the mere fact another's intervening negligent act is a further cause of the accident does not prevent defendant's act from constituting a cause for which he is liable.

(Citations omitted.)

We conclude reasonable persons could disagree as to whether Comet's modification broke the causal chain between Dreis' design choice and Mr. Anderson's injury. Consequently, the court erred in holding the modification of the activation system was a superseding cause of Mr.

Anderson's injury as a matter of law.

E

COMET'S FAILURE TO SUPPLY GUARDS

Notwithstanding the foregoing analysis, Dreis argues, relying on *Campbell v. ITE Imperial Corp., supra,* that Comet had actual, specific knowledge of the danger created by the press' lack of guards and thus had a duty to itself supply such guards. Dreis argues Comet's failure to supply such guards was a negligent act sufficient to constitute a superseding cause as a matter of law. We disagree.

The Restatement (Second) of Torts § 449, at 482 (1965) provides the negligence of a third party does not constitute a superseding cause "[i]f the likelihood that a third person may act in a particular manner is . . . one of the hazards which makes the [original] actor negligent". *See also Campbell,* at 814–15. This court has previously held it is foreseeable a small company which purchases dangerous industrial machinery will not install guards on that machinery when the manufacturer delivers that equipment without them. *Parkins v. Van Doren Sales, Inc.,* 45 Wn. App. 19, 29, 724 P.2d 389 (1986); Note, *Products Liability—Manufacturer May Be Held Strictly Liable to Employee of Purchaser for Failure To Install Safety Devices Despite Expectation That They Would Be Installed by Purchaser—Bexiga v. Havir Mfg. Corp., 60 N.J. 402, 290 A.2d 281 (1972),* 86 Harv. L. Rev. 923, 927 (1973). Not only is the manufacturer's duty to supply safety guards on dangerous industrial equipment nondelegable, *Bexiga v. Havir Mfg. Corp., supra,* but the failure of the purchaser to supply guards is so likely that it constitutes one of the hazards which makes a manufacturer's failure to supply such guards negligent. Restatement (Second) of Torts § 449 (1965). Moreover, the public interest in assuring that appropriate safety devices be installed on industrial machinery would be undermined if installation was left to the "haphazard conduct of the ultimate purchaser." *Bexiga,* at 410.

We further note Dreis' reliance on the "actual, specific knowledge" language in *Campbell*, at 817, is misplaced; it is both factually and procedurally distinguishable. In *Campbell*, the issue was whether a Public Utility District had a duty, in the absence of a warning by the manufacturer of electrical switchgear, to warn its employees that such switchgear could remain electrified. *See also Little v. PPG Indus., Inc.*, 92 Wn.2d 118, 594 P.2d 911 (1979). In contrast, this case involves the question of whether Comet had the significantly more burdensome duty to supply point–of–operation devices. Also, the question in *Campbell* related to whether the jury should have been instructed that the PUD's failure to warn its employees of the danger constituted a superseding cause. Here, the issue is whether the case should go to the jury.[8]

Thus, we hold a question of fact exists as to whether Comet's failure to supply guards was a negligent act sufficient to relieve Dreis of responsibility.

F

COMET'S CONTINUED USE OF THE PRESS AFTER THE DEPARTMENT OF LABOR AND INDUSTRIES WARNING

Dreis further contends Comet's continued use of the guardless press after being warned by the Department of Labor and Industries that the press was dangerous without guards constitutes a superseding cause of the injury. To the extent this argument is related to the one set out immediately above, we need not address it further. Notwithstanding, *Rhoads v. Service Mach. Co., supra,* is particularly apt here.

In *Rhoads*, the press, like the one in question here, had been shipped with dual hand controls and a warning

---

[8]Even if *Campbell* and *Little* apply in this context, the record is conflicting as to the extent Comet was aware the press was unsafe because of lack of safety guards. Although the record reveals supervisory personnel at Comet believed the unguarded press was a "serious problem," they also believed its operation was "safe." Like the circumstances in *Campbell*, there is no evidence other accidents had occurred involving the press.

sign; it possessed no point–of–operation guards. Prior to the accident, the Arkansas Department of Labor ordered the purchaser (employer) to install safety guards on the press. The purchaser failed to install the guards, deactivated the dual hand control, and installed an alternative activation device. That device was accidentally activated, resulting in the plaintiff's injury. The court rejected the contention such conduct on the part of the purchaser-employer amounted to a superseding cause, immunizing the manufacturer from liability as a matter of law; the court declared at page 376:

> While the defendant may have thought that Al–Craft would have taken adequate precautions to protect its employees, or that it would be required to do so by its workmen's compensation insurance carrier or by regulatory agencies of the State of Arkansas, the Court does not think that as a matter of law defendant had a right to assume that protective devices would be provided.

*Accord, Balido,* at 647 ("an owner's lack of compliance with a state safety order does not release a manufacturer from liability for injuries attributable to deficient safety design"); *Bexiga v. Havir Mfg. Corp., supra; Finnegan v. Havir Mfg. Corp.,* 60 N.J. 413, 290 A.2d 286 (1972). We agree with the reasoning manifested in those decisions and likewise hold Comet's failure to heed the Department's warning does not immunize Dreis as a matter of law.[9]

---

[9]We briefly address two other issues: (1) In light of the warning on the press, did Mr. Anderson assume the risk of injury such that his conduct was a superseding cause as a matter of law? (2) Does the presence of a warning on an otherwise deficiently designed press absolve the manufacturer from liability? First, we decline to hold Mr. Anderson deliberately and voluntarily assumed the risk of the press' accidental activation as a matter of law. Notwithstanding, if he can be said to have assumed the risk, in a products liability case, that defense operates as a damages reducing factor only, not a complete bar to recovery. *Campbell,* at 820.

Second, the warning notice on the press does not immunize Dreis from liability for its deficient design. *Rhoads v. Service Mach. Co., supra; Balido v. Improved Mach., Inc., supra; cf. Lamon v. McDonnell Douglas Corp.,* 19 Wn. App. 515, 523–24, 576 P.2d 426 (1978), *aff'd,* 91 Wn.2d 345, 588 P.2d 1346 (1979); *Palmer v. Massey–Ferguson, Inc.,* 3 Wn. App. 508, 510, 476 P.2d 713 (1970). A manufacturer which produces a machine which is otherwise defective because of the absence of safety features or guards should not escape liability for defective

# G
## Summary

In conclusion, we affirm the trial court's summary judgment on the issues of breach of warranty and breach of the duty to warn. We reverse the trial court's determination that the press was not defectively designed as a matter of law and that Dreis' design was not the legal cause of Mr. Anderson's injury as a matter of law. Therefore, we reverse and remand for trial.

McINTURFF, C.J., concurs.

GREEN, J. (dissenting)—In my view the trial judge was correct in ruling the modification of the activation mechanism of the press was the intervening proximate cause of Mr. Anderson's injuries and dismissing the complaint.

The press was designed to be activated by the use of two buttons or a foot treadle. When the buttons were used, it was impossible for the operator's hands to be under the press. The purchaser, Comet, elected to activate the press by use of the buttons. However, instead of using the two buttons as the machine was designed, Comet not only modified the press so it could be activated by one button, but placed that button in a position where it could be accidently activated by the operator's body rubbing against it. That is what happened here. The operator, while removing metal from beneath the press, rubbed against the dangling button setting off the press and injuring his hand.

It is apparent that the sole and proximate cause of this accident was Comet's negligent modification of the button activation system, creating the danger of accidental activation.

If the accident had happened while using the foot treadle, then the issue of defective design as the proximate cause of the injury would create a question for the trier of

---

design as a matter of law simply by warning of a dangerous condition which reasonably could have been avoided by a safer design. *Schell v. AMF, Inc.,* 567 F.2d 1259 (3d Cir. 1977).

fact. Here, the treadle was not used and the question of defective design for treadle use is not an issue.

I would affirm.

Review denied by Supreme Court October 6, 1987.