922 P.2d 59 (1996)
130 Wash.2d 160
E. Rosa YOUNG, Guardian ad litem for Devan YOUNG, a minor child, Appellant,
v.
KEY PHARMACEUTICALS, INC., a foreign corporation, Schering Plough Corp. and Schering Corp., Respondents.
No. 63215-4.
Supreme Court of Washington, En Banc.
Argued March 6, 1996.
Decided September 12, 1996.
*60 Bryan Harnetiaux, Spokane, Gary N. Bloom, Spokane, Debra L. Stephens, Spokane, on behalf of Washington State Trial Lawyers Association, amicus curiae.
Helsell, Fetterman & Martin, John G. Bergmann, Seattle.
Preston, Gates & Ellis, Fredric C. Tausend, Seattle, for Appellant.
James L. Holman & Associates, James L. Holman, Daniel W. Ferm, Tacoma, Williams, Kastner & Gibbs, Joel D. Cunningham, Seattle, John P. Walsh, Seattle, for Respondents.
GUY, Justice.
This is a products liability action against the manufacturer of a prescription drug (theophylline) which is used to alleviate symptoms of asthma. In 1979, Plaintiff suffered permanent brain damage as a result of seizures allegedly caused by toxic levels of theophylline in his bloodstream. Plaintiff claims his injuries resulted from the manufacturer's failure to provide adequate information and warnings to prescribing physicians about the effect of viral illnesses on the body's ability to metabolize the drug. Plaintiff appeals the trial court's summary dismissal of his strict liability claim. The manufacturer appeals the Court of Appeals' reversal of a jury verdict in its favor on Plaintiff's negligence claim. The Court of Appeals held that the trial court committed reversible error when it excluded an exhibit offered by Plaintiff and when it refused to give two of Plaintiff's proposed jury instructions. We affirm the trial court in all respects.

*61 FACTS
Plaintiff Devan Young[1] will be 21 years old on May 19, 1996. The injuries complained of in this lawsuit occurred more than 17 years ago, on the morning of February 1, 1979, when Devan was three years old.
Prior to that date, Devan Young had had a history of severe asthma, a respiratory disease. He had been hospitalized four times and had been seen at the emergency room more than 80 times. The severity of his asthmatic condition posed a significant threat to his life.
In order to alleviate the symptoms of his asthma, doctors prescribed theophylline for Devan. Theophylline is an effective bronchodilator that has been used to treat the symptoms of asthma for many years. Theo-Dur, manufactured by Defendant Key Pharmaceuticals, Inc., is theophylline in a sustained-release preparation. Theo-Dur is designed to slowly release theophylline into the blood stream over a 12-hour period so as to be effective 24 hours a day when taken twice a day. Theo-Dur was the drug prescribed for Devan Young.
In the late 1970s, theophylline's use in asthmatic children was known to pose a risk primarily for two reasons. The first was that theophylline has a "narrow therapeutic range," in that serum concentrations have to be between 10 and 20 micrograms per milliliter (mcg/ml) to be effective. Below that level the drug is ineffective; above that level there is a risk of adverse reactions, including the risk of seizures. The second was that children metabolize and eliminate theophylline rapidly. In order to maintain the therapeutic level in children, doctors had to prescribe dosages and schedules that often were difficult to maintain, and children tended to suffer from "peaks and valleys" in theophylline treatment because their serum levels would drop below the therapeutic range before they received their next scheduled dosage. Theo-Dur was designed to reduce the "peaks and valleys" experienced by children, thus increasing the effectiveness of theophylline as a treatment for asthmatic children.
Devan Young's physician prescribed Theo-Dur beginning in September 1978. His blood was tested on January 26, 1979, and the theophylline level was within the therapeutic range. At that time, doctors believed they could safely rely on the results of blood tests showing the theophylline level for six months.
On January 31, 1979, Devan Young's mother brought him to the allergy medical clinic at Children's Orthopedic Hospital for his regularly scheduled allergy shot. The shot was not given because the clinic nurse thought the child looked sick that day. Devan was then seen by his doctor at the clinic. There was no notation in the doctor's records that the child had either a viral illness or a fever. He had a "barking cough" that was attributed to his asthmatic condition.
In the early morning hours of February 1, 1979, Devan began to have seizures and was rushed to the hospital. He had been experiencing flu symptoms the previous evening and had a fever when he was admitted to the hospital. His seizure persisted and doctors speculated at that time that the seizure was fever-induced. Later that day doctors drew blood from Devan and discovered that his serum theophylline level had reached 68 mcg/ ml. The viral illness and fever from which Devan suffered on that day purportedly caused the theophylline elimination in his system to slow. The theophylline levels thus became elevated to a point of toxicity, causing seizure.[2]
The seizures suffered by Devan Young on the morning of February 1, 1979, caused permanent and severe brain damage.
Plaintiff Young, through his guardian ad litem E. Rosa Young, brought suit against *62 the hospital, the treating physicians and Key Pharmaceuticals. Plaintiff claimed Key was liable under both strict liability and negligence theories. The hospital and physicians were dismissed on summary judgment, and that dismissal was upheld by this court in Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 770 P.2d 182 (1989). The case was remanded for trial against Key Pharmaceuticals, the only remaining defendant.
In July 1991, Key's motion for summary judgment of dismissal on the strict liability claim was granted. The case then proceeded to trial on the negligence theory. The evidence at trial showed that Key Pharmaceuticals was aware of reports, studies and articles prior to February 1, 1979, which suggested that prolonged fever and certain viral illnesses, including flu, might impair the body's ability to eliminate theophylline and that the relationship between the drug and viral illness or fever could result in the accumulation of toxic levels of theophylline in the body, even when administered in normal doses. By the time of trial there was no dispute as to the validity of these studies. The question at trial was whether Key should have warned prescribing physicians of this "possible" risk based on the information it had available to it prior to February 1, 1979. Plaintiff argued that Key knew or should have known of the dangers the drug presented and should have warned doctors of the risks involved in prescribing the drug. Key defended against the claim that it failed to adequately warn against the dangers involved in using the drug by arguing that, in late 1978 and early 1979, the state of knowledge about the relationship between fevers or viral illnesses and theophylline was not yet clinically reliable and that it would have been irresponsible for the drug company to warn of risks that were not yet proven to be legitimate risks. At the end of a five-week trial, the jury returned a defense verdict, finding that Key was not negligent.
Plaintiff appealed. The Court of Appeals, in an unpublished opinion, affirmed the trial court's dismissal of the strict liability claim. It then reversed on the negligence claim, holding the trial court erred in excluding exhibit 19, an advertisement for another theophylline medication, and that it erred in refusing to give two of Plaintiff's proposed jury instructions relating to the duty to warn. Key Pharmaceuticals petitioned for review of the Court of Appeals' ruling on the evidentiary and jury instruction issues, and Plaintiff Young petitioned for review of the strict liability issue. We granted review on these issues.[3]

ISSUES
1. Did the trial court err in dismissing Plaintiff's strict liability claim?
2. Did the trial court err in excluding a post-injury advertisement for a substantially identical theophylline drug, manufactured by a different drug company, which indicated that there may be a potential danger to theophylline users who have high fevers or certain viral illnesses?
3. Did the trial court's instruction to the jury on duty to warn misstate the law or prevent the parties from arguing their theories of the case?

DISCUSSION

Strict Liability
The Court of Appeals affirmed the trial court's summary dismissal of Plaintiff Young's strict liability claims in an unpublished opinion authored by Judge Agid. The Court of Appeals' opinion on this issue is succinct, well reasoned and carefully stated. Because we cannot improve upon it, we set it forth in full below and adopt it as our own.
The trial court dismissed Young's strict liability claim, ruling that the question whether Key had failed to provide adequate warning to physicians about Theo-Dur is governed by a negligence standard under the Restatement (Second) of Torts § 402A, comment k (1965).
Washington has adopted the strict liability formulation of the Restatement (Second) *63 of Torts § 402A (1965) in a series of cases beginning with Ulmer v. Ford Motor Co., 75 Wash.2d 522, 531-32, 452 P.2d 729 (1969). Comment k to section 402A adopted into Washington law in Terhune v. A.H. Robins Co., 90 Wash.2d 9, 12-13, 577 P.2d 975 (1978), provides an exception to the strict liability doctrine under the following conditions:
k. Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.
In Terhune, the court applied comment k to the Dalkon Shield, holding that while a manufacturer has a duty to warn about unavoidably unsafe products, where the product can be sold only under prescription, the duty to warn runs only to the physician, not to the ultimate consumer. 90 Wash.2d at 13, 17, 577 P.2d 975.
In Rogers v. Miles Laboratories, Inc., 116 Wash.2d 195, 802 P.2d 1346 (1991), the court considered the question whether comment k should apply to shield a manufacturer from strict liability when it fails to adequately warn of the dangers of its product. Adopting the reasoning of the California Supreme Court in Brown v. Superior Court, 44 Cal.3d 1049, 1059, 751 P.2d 470, 245 Cal.Rptr. 412 (1988), the Rogers court held that, when a manufacturer of an unavoidably unsafe product fails to adequately warn of its inherent dangers, comment k imposes liability only for negligence, not strict liability. 116 Wash.2d at 207, 802 P.2d 1346. The Rogers court reasoned:
[A]s the California Supreme Court recently noted:
there is a general consensus that, although [comment k] purports to explain the strict liability doctrine, in fact the principle it states is based on negligence. That is, comment k would impose liability on a drug manufacturer only if it failed to warn of a defect of which it either knew or should have known. This concept focuses not on a deficiency in the productthe hallmark of strict liabilitybut on the fault of the producer in failing to warn of dangers inherent in the use of its product that were either known or knowablean idea which "rings of negligence[ ]"....
(Footnote and citations omitted.) Brown, 44 Cal.3d at 1059, 245 Cal.Rptr. 412, 751 P.2d 470. We agree with this analysis. If the manufacturer of an unavoidably unsafe product fails to provide an adequate warning, it has been negligentbut it is liable in negligence and not in strict liability.

*64 116 Wash.2d at 207, 802 P.2d 1346. The Rogers court thus rejected the argument that, where a manufacturer has not met its duty to warn, it would be strictly liable. 116 Wash.2d at 207, 802 P.2d 1346. As the Brown court explained in more detail:
The test stated in comment k is to be distinguished from strict liability for failure to warn. Although both concepts identify failure to warn as the basis of liability, comment k imposes liability only if the manufacturer knew or should have known of the defect at the time the product was sold or distributed. Under strict liability, the reason why the warning was not issued is irrelevant, and the manufacturer is liable even if it neither knew or could have known of the defect about which the warning was required. Thus, comment k, by focussing on the blameworthiness of the manufacturer, sets forth a test which sounds in negligence, while imposition of liability for failure to warn without regard to the reason for such failure is consistent with strict liability since it asks only whether the product that caused injury contained a defect. (See Little v. PPG Industries, Inc. (1978), 19 Wash.App. 812, 579 P.2d 940, 946.)

Brown, 245 Cal.Rptr. at 417 n. 4, 751 P.2d at 476 n. 4. The Rogers court explained the policy concerns underlying comment k as follows:
Comment k justifies an exception from strict liability by focusing on the product and its relative value to society, rather than on the manufacturer's position in the stream of commerce. Some products are necessary regardless of the risks involved to the user. The alternative would be that a product, essential to sustain the life of some individuals, would not be availablethus resulting in a greater harm to the individual than that risked through use of the product.
116 Wash.2d at 204, 802 P.2d 1346.
The allegation here is that Key failed to warn physicians of dangers associated with a prescription drug about which it knew or should have known based on the studies and medical literature available at that time. Under Washington case law interpreting comment k, the question whether Key satisfied its duty to warn physicians of known dangers raises an issue of negligence, not strict liability. Rogers, 116 Wash.2d at 207, 802 P.2d 1346. The trial court properly dismissed Young's failure-to-warn strict liability claim under the applicable case law.3
Young argues nevertheless that we must undertake a case-by-case analysis to determine whether Theo-Dur is "unavoidably unsafe", especially since it is no longer an experimental drug or "the only hope for asthmatics".4 The language of comment k, however, makes clear that, while the policy concerns the comment iterates are particularly true of many new and experimental drugs and of vaccines such as the Pasteur treatment for rabies, "[t]he same is true of many other drugs, vaccines, and the like". As comment k notes, it is for this very reason that such drugs cannot be legally sold except to physicians or under prescription by a physician; i.e., it is precisely because they are unavoidably unsafe to some degree that they are prescription drugs. Accord Terhune, 90 Wash.2d at 13, 577 P.2d 975.
While there is language in comment k that can be read otherwise, the focus of both Terhune and Rogers is such that we conclude that, under Washington law, a separate determination of whether a product is unavoidably unsafe need not be made on a case-by-case basis if that product is a prescription drug.5 See Rogers, 116 Wash.2d at 207, 802 P.2d 1346 (discussing prescription drugs); Terhune, 90 Wash.2d at 13-14, 16, 577 P.2d 975 (comment k applies to prescription medical products because of the "character of the medical profession" and the active, intermediate involvement of a physician). See also Brown, 245 Cal.Rptr. at 424 n. 11, 751 P.2d at 482 n. 11 (acknowledging that the language of comment k can be read both to apply to all prescription drugs or to require a case-by-case determination, but concluding that it was intended to and should apply to all prescription drugs). The trial court properly concluded that comment k applied and that, while Key *65 could be held liable if it were negligent in failing to warn, it was not strictly liable for any such failure.
3 Ayers v. Johnson & Johnson Baby Prods. Co., 117 Wash.2d 747, 818 P.2d 1337 (1991), is inapposite because it interpreted Washington's product liability act, RCW 7.72, and involved not a prescription drug but an over-the-counter product, baby oil.
4 Young's argument that the danger in this instance was "unknown" and that this changes the analysis does not persuade us. Comment k encompasses not only "known" risks, but also the risks that attend "many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety". Even where a drug like theophylline has been in use for a number of decades, it is obviously impossible to know absolutely that every risk attendant to its use is already known. See Brown, 245 Cal.Rptr. at 418, 751 P.2d at 477 (a "physician appreciates the fact that all prescription drugs involve inherent risks, known and unknown, and he does not expect that the drug is without such risks"); Rogers, 116 Wash.2d at 203, 802 P.2d 1346 (rejecting the notion that comment k is inapplicable to blood products contaminated by an unknown virus). His argument that comment k does not apply to Theo-Dur because it was not "the only hope for asthmatics" also fails. Terhune applied comment k to the Dalkon Shield, thus making clear that under Washington law, the comment is not limited to last ditch life-saving measures. 90 Wash.2d at 12-13, 577 P.2d 975.
5 Pollard v. Ashby, 793 S.W.2d 394 (Mo.App. 1990) and Hill v. Searle Laboratories, 884 F.2d 1064 (8th Cir.1989), on which Young relies to support his argument that comment k does not apply, interpret Montana and Arkansas law respectively. Pollard acknowledges that the language of comment k can be construed broadly to apply to all prescription drugs as Brown did or narrowly to require an evaluation of each drug on a case-by-case basis. 793 S.W.2d at 399. Hill similarly observes that, although it disagrees with the approach, Washington courts are among those concluding that comment k should apply to all prescription drugs. 884 F.2d at 1068.
Young v. Key Pharmaceuticals, Inc., No. 33070-5-I, slip op. at 2-8 (Wash.App. June 19, 1995) (footnote omitted).

Exhibit 19
Key Pharmaceuticals' defense against the negligent failure to warn claim was essentially that the state of knowledge with respect to the relationship between viral illnesses and theophylline toxicity was not clinically reliable enough in late 1978-early 1979 to justify informing doctors of the drug's potential danger to children with viral illnesses or prolonged fevers.
Evidence before the jury included an article published in May 1978 in The Lancet by four doctors from the National Asthma Center and Department of Pediatrics at the University of Colorado Medical Center. The article described a study of 10 asthmatic children who were treated with theophylline and states that "preliminary results suggest that certain upper-respiratory-tract viral infections may affect theophylline metabolism." Exhibit 82. The article concludes, "Since theophylline concentrations may increase to toxic levels during certain acute viral infections or, alternatively, may fall afterwards, concentrations should be monitored both when symptoms of theophylline toxicity, such as nausea, vomiting, or seizures, accompany acute viral infection and when asthma is poorly controlled with an unchanged theophylline dose after viral infection." Exhibit 82. Plaintiff argued that this article, and others in evidence, provided the knowledge that created a duty on the part of Key to warn of possible dangers of theophylline toxicity. One of the authors of the Lancet article, Dr. T.D. Bell, testified at trial that neither the observations upon which the article was based nor the article itself established a cause-and-effect relationship between viral illness and reduced metabolizing or clearance of theophylline. He also testified that he did not believe doctors should have been warned, at that time, by the drug company of possible theophylline toxicity due to viral infection. Dr. Bell stated that such a warning
is a double-edged sword that can create irreparable damage. Taking a drug, at that point, that may have been our mainstay for the treatment of asthma, and causing physicians throughout the United States, or the world, to panic about the drug unnecessarily, without justification, without clear-cut proof, without collaboration and other physicians observing and confirming our initial suspicion, would have been irresponsible....
Report of Proceedings at 3469-70.
Following rebuttal, Plaintiff attempted to introduce into evidence exhibit 19. This exhibit *66 is a photocopy of the cover of The Journal of Allergy and Clinical Immunology, dated February 1979, and a photocopy of an advertisement which apparently appeared in that journal. The advertisement is based on a package insert for Sustaire, a theophylline sustained-release medication, which the evidence suggests is identical to Theo-Dur, but which is manufactured by another drug company, Pfizer Pharmaceuticals. In a paragraph labeled "CLINICAL PHARMACOLOGY," the advertisement states, "High fever for prolonged periods and certain viral illnesses may decrease theophylline elimination." There is no additional mention of the decrease in elimination of the drug in the paragraph labeled "WARNINGS." The advertisement purportedly appeared in the February 1979 Journal of Allergy and Clinical Immunology. The child involved here was injured in the early morning hours on February 1, 1979.
Plaintiff had first sought the admission of exhibit 19 on April 14, 1993, at the conclusion of his case and one week before the court made its final ruling to exclude the exhibit. At that time the trial court asked how the document was produced and was informed by Plaintiff's counsel that he had found the exhibit by looking through journals. The trial court reserved ruling on the admission or exclusion of the exhibit, stating:
I guess I have a problemI certainly have plaintiffs' counsel's representation that it came out of that particular journal, so I guess I know the date. I guess my problem is it's so close to the critical events of this case ...
... The question really comes down to whether somehow whatever Pfizer [Sustaire's manufacturer] knew and decided to do with regard to Sustaire was known and available to Key ...
I guess my problem with it is you've got tosomehow you've got to bring this down to Key and get it away from Pfizer into Key's knowledge.
Report of Proceedings at 3030-31.
Key objected to the admission of the advertisement on four grounds. First, it argued that the advertisement was post-injury. Second, Key argued there was inadequate foundation for the exhibit. Third, it argued that pointing to an individual company's labeling does not establish an industry standard and, under Haysom v. Coleman Lantern Co., 89 Wash.2d 474, 573 P.2d 785, 93 A.L.R.3d 86 (1978), the advertisement would be inadmissible to prove negligent failure to warn on the part of Key. Fourth, Key argued the exhibit would be extremely prejudicial and irrelevant because the advertisement appeared to be, at most, a draft for the Physician's Desk Reference that the FDA refused to approve. The trial court excluded the exhibit.
The Court of Appeals held that the exclusion of exhibit 19 was reversible error. We reverse the Court of Appeals and hold the exhibit was properly excluded. See State v. Markle, 118 Wash.2d 424, 438, 823 P.2d 1101 (1992); State v. Hutchins, 73 Wash.App. 211, 214, 868 P.2d 196 (1994); Davis v. Globe Mach. Mfg. Co., 102 Wash.2d 68, 76, 684 P.2d 692 (1984); Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 168, 876 P.2d 435 (1994).
Exhibit 19, the Sustaire advertisement, lacked a proper foundation. Plaintiff's counsel submitted a photocopy of an advertisement and a photocopy of a magazine cover, informing the trial court of the date and publication in which the advertisement appeared. Although the trial court gave Plaintiff a week in which to provide additional support for the exhibit, Plaintiff did not establish the basis or source of information for the statement contained in the Sustaire advertisement and did not connect the information to Key even though he was given the opportunity to present evidence in that regard. Because of the lack of foundation, there was no evidence supporting an inference from the exhibit that the basis of the information contained in the advertisement or the basis for the decision to impart that information was available to Key. The only arguable relevance of the Sustaire advertisement was to show that another individual manufacturer either had additional evidence that was not shown to be available to Key or that it assessed the available information differently. The decision of another manufacturer to provide information about a product *67 or warn of its perceived potential dangers is relevant to show the negligence of a defendant manufacturer only if it rises to the level of an industry standard. Coleman Lantern Co., 89 Wash.2d 474, 573 P.2d 785. In this case there was no showing that the single post-incident statement in the Sustaire advertisement was the industry standard with respect to theophylline.
The exclusion of the Sustaire advertisement was not erroneous.

Jury Instructions
The trial court's jury instruction setting forth the manufacturer's duty to warn under a negligence theory stated:
A pharmaceutical manufacturer is under a duty to use ordinary care to test, analyze and inspect the drug products it sells, and is charged with knowing what such tests should have revealed.
The pharmaceutical manufacturer has a duty to use ordinary care to keep abreast of scientific knowledge, discoveries, advances and research in the field, and is presumed to know what is imparted thereby.
When a pharmaceutical manufacturer becomes aware or should have become aware of dangerous aspects of one of its drug products, it has a continuing duty to warn of such dangerous aspects. In such a case, the pharmaceutical manufacturer is under a duty to act with regard to issuing warnings or instructions concerning any such danger in the manner that a reasonably prudent pharmaceutical manufacturer would act in the same or similar circumstances. This duty is satisfied if the manufacturer exercises reasonable care to inform the ordinary physician who prescribes that drug product.
The question of whether defendant, Key Pharmaceuticals, Inc., exercised reasonable care is to be determined by what defendant Key knew or reasonably should have known prior to the time of plaintiff's injury on February 1, 1979.
Clerk's Papers at 1164 (instruction 15).
Plaintiff objected to the above instruction 15 and proposed an instruction that would include the following language with respect to when the duty to warn attaches:
This duty to warn attaches, not when scientific certainty of harm is established, but whenever a reasonable physician using the product would want to be informed of the risk of harm in order to decide how to safely use the drug in treating his or her patients.
Clerk's Papers at 500 (Plaintiff's proposed jury instruction 17).
Plaintiff's proposed instruction 18 states:
The manufacturer of a pharmaceutical product has a duty to a physician who prescribes it to provide all necessary instructions and warnings to fully apprise the physician of the proper procedures for its safe use and the dangers involved.
Clerk's Papers at 501.
The trial court rejected both proposed instructions, stating that the court's instruction 15 was based on WPI 110.03.01 and on the language of the instruction discussed and approved by the court in Koker v. Armstrong Cork, Inc., 60 Wash.App. 466, 804 P.2d 659, review denied, 117 Wash.2d 1006, 815 P.2d 265 (1991). The trial court stated that the third paragraph of instruction 15 would tell the jury what the duty to warn was and when the duty to warn attaches. The Court of Appeals held the trial court's failure to give Plaintiff's proposed instructions 17 and 18 constituted reversible error.
The number and language of jury instructions are matters left to the trial court's discretion. Douglas v. Freeman, 117 Wash.2d 242, 256, 814 P.2d 1160 (1991); Petersen v. State, 100 Wash.2d 421, 440, 671 P.2d 230 (1983). The test for the sufficiency of instructions is whether the instructions, read as a whole, (1) allow counsel to argue their theories of the case, (2) are not misleading, and (3) properly inform the trier of fact of the applicable law. Douglas, 117 Wash.2d at 256-57, 814 P.2d 1160; Gammon v. Clark Equip. Co., 104 Wash.2d 613, 617, 707 P.2d 685 (1985).
The Plaintiff's theory of the case with respect to Key's duty to warn was that the manufacturer should have warned Plaintiff's *68 physicians about the possible dangers of the drug when those physicians would have wanted to be informed of possible dangers.
Instruction 15 did not require the jury to find that a manufacturer's duty to warn arose, in every instance, whenever a reasonable physician would want to have informationwhether reliable or notabout a particular drug. However, the instruction did permit Plaintiff to argue that the reasonableness of a manufacturer's actions must be based in part on the desire of doctors to have information about the possible risks of the drugs they are administering. In fact Plaintiff did argue that Key should have warned based on what a physician would want to know in order to use the product safely.
Plaintiff argues that the correct statement of the law with respect to when the duty to warn attaches is set forth in an instruction approved by the Court of Appeals in Koker, 60 Wash.App. 466, 804 P.2d 659. In Koker, a products liability action brought against the manufacturer of products containing asbestos, the trial court instructed the jury that the manufacturer had a duty to use ordinary care to keep abreast of scientific knowledge, discoveries, advances and research in the field, and is presumed to know what is imparted thereby. In the same instruction, the jury was told that a product manufacturer has a duty to warn when it becomes aware or should have become aware of dangerous aspects of its product, even when the dangerous aspects are discovered after the product has left the manufacturer's hands, and further that
[t]his duty to warn attaches, not when scientific certainty of harm is established, but whenever a reasonable person using the product would want to be informed of the risk of harm in order to decide whether to expose himself to it.
Koker, 60 Wash.App. at 477, 804 P.2d 659.
The challenges to the Koker instruction were to (1) the statement that the manufacturer had a duty to test or to keep abreast of scientific discoveries, and (2) the language that the manufacturer was presumed to know what knowledge was imparted by tests and scientific discoveries. There was no challenge to the language at issue in this case, and the Koker court's approval of the instruction did not specifically include approval of the precise language that Plaintiff claims should have been used here.
The language contained in the last paragraph of the Koker instruction and in Plaintiff Young's proposed instruction 17 is an incorrect statement of the law with regard to negligence actions. Under the proposed instruction, the determination of when the duty to warn arises would focus on consumer (or physician, as the learned intermediary) expectations, rather than on the actions of a reasonably prudent manufacturer. In a negligence action, the focus is on the conduct of the manufacturer; in a strict liability action, the focus is on the product and the consumer's expectations. Ayers v. Johnson & Johnson Baby Prods. Co., 117 Wash.2d 747, 762, 818 P.2d 1337 (1991); Davis v. Globe Mach. Mfg. Co., 102 Wash.2d at 72, 684 P.2d 692.
The trial court's instruction 15 provides that the duty to warn arises when a manufacturer becomes aware or should have become aware of dangerous aspects of one of its products. The instruction does not require a finding, as Plaintiff suggests, that the danger must be established as a scientific certainty before the duty to warn attaches. Instead, it properly focuses on the duty as based on what a reasonably prudent drug manufacturer would do under the circumstances, including the consideration that a physician may have wanted to have all available information about the drug. The trial court's instruction correctly states the law under a negligence standard, it allows both parties to argue their respective theories of the case, and it is not misleading. The trial court did not err in refusing to give Plaintiff's proposed instructions 17 and 18.

CONCLUSION
The Court of Appeals' decision that summary judgment was properly granted on the strict liability issue is affirmed. The decision of the Court of Appeals with respect to the exclusion of exhibit 19 and with respect to *69 the sufficiency of the jury instructions is reversed.
DURHAM, C.J., and DOLLIVER and SMITH, JJ., concur.
MADSEN, Justice (dissenting).
The majority has adopted, verbatim, the Court of Appeal's analysis regarding plaintiff's strict liability claim for failure to adequately warn of the dangers of Theo-Dur.[1] Unfortunately, both the majority and the Court of Appeals fail to recognize that while application of the comment k exception to Restatement (Second) of Torts § 402A (1965) depends upon adequate warnings having been given, the adequacy of warnings is not measured by comment k, but is instead measured by the strict liability standard of § 402A. Rogers v. Miles Laboratories, 116 Wash.2d 195, 802 P.2d 1346 (1991) contains language supporting the majority. However, the analysis in Rogers was founded on a California Supreme Court decision which the California Court subsequently explained did not hold that comment k alters the § 402A rule of strict liability when the claim is failure to adequately warn. Rogers is, thus, inconsistent with the California law it purports to follow. It is also inconsistent with the court's holding that a failure to warn claim is a strict liability claim.
Three types of product defects may give rise to a strict liability claim against a product's manufacturer: a flaw in the manufacturing process; a defect in design; or a failure to warn of dangers in the use of a product which renders an otherwise reasonably safe product dangerous. American Law of Products Liability 3d § 17:3, at 12 (1987). Under the Restatement (Second) of Torts § 402A, a manufacturer is strictly liable for either a defective condition in the product arising from design or manufacture, or a failure to give adequate warning of the risks associated with use of the product. Id. Washington adopted the rule of strict liability embodied in § 402A. Ulmer v. Ford Motor Co., 75 Wash.2d 522, 531-32, 452 P.2d 729 (1969). In Little v. PPG Indus., 92 Wash.2d 118, 120, 594 P.2d 911 (1979), this court made it clear that the rule of strict liability in Washington encompasses claims of failure to warn. The focus of inquiry in a failure to warn claim is on the warning itself and the reasonable expectations of the consumer. Id. at 122, 594 P.2d 911. The adequacy of the warning, in most cases, is a jury question. Id. at 123, 594 P.2d 911. In strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial. Id. at 122, 594 P.2d 911.
The sole claim in the case before us is that the manufacturer, Key Pharmaceuticals, failed to adequately warn of the risks involved in using Theo-Dur. The trial court found that the prescription drug in this case, Theo-Dur, fell within the exception to § 402A's strict liability standard embodied in comment k. The court then concluded that the rule of strict liability does not apply to a product encompassed by comment k.
The majority, by adopting the Court of Appeals opinion, agrees with the trial court, finding Rogers, 116 Wash.2d 195, 802 P.2d 1346, dispositive on the question of "whether comment k should apply to shield a manufacturer from strict liability when it fails to adequately warn of the dangers of its product." Majority at 63. The majority concludes that the Rogers court "rejected the argument that, where a manufacturer has not met its duty to warn, it would be strictly liable." Majority at 64. I agree with the majority that Rogers indeed considered the question and reached the attributed conclusion. I strongly disagree, however, with the majority's conclusion that Rogers either establishes binding precedent or makes good sense.
The starting place in the analysis must be Restatement (Second) of Torts § 402A, which sets forth a strict liability rule relating to defective products. Section 402A, comment k, establishes an exception to that rule in the very limited circumstance in which a product cannot be made safe for its ordinary and intended use, such as in the case of some drugs. Where the prerequisites of comment k are met, a manufacturer of such an unavoidably *70 unsafe product may be liable only in negligence for injuries proximately caused by the qualifying product. The rationale underlying the exception is the recognition that certain products are incapable of being made safe for their intended and ordinary use, but the marketing of such products is justified despite the medically recognizable risk because of the social utility of having the product available. Provided that such products "are properly prepared and marketed, and proper warning is given" a manufacturer of a product falling within the ambit of comment k will not be strictly liable for the consequences of using the product merely because it has undertaken to supply the public with an apparently useful and desirable product, attended with a known, but apparently reasonable, risk. Restatement (Second) of Torts § 402A, comment k (emphasis added). Such a product "properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous." Restatement (Second) of Torts § 402A, comment k (some emphasis added).
By its express terms, comment k protection from strict liability is not available to a manufacturer who fails to adequately warn. Comment k does not state whether the adequacy of its required warning is measured under a negligence or strict liability standard. This is so because the comment is intended to apply to a claim of design defect and assumes that adequate warnings were given. Adequate warnings are a predicate to application of comment k, but the adequacy of those warnings is not governed by comment k. Rather, warnings are measured under the rule set forth in § 402A, and the exception to that rule, outlined in comment k, applies only after the trier of fact determines whether the known or knowable risk was disclosed. Under Little v. PPG Industries, 92 Wash.2d 118, 594 P.2d 911, the reasonableness of the defendant's failure to warn is immaterial. Instead, the manufacturer is strictly liable for its failure to adequately warn, measured by the reasonable expectations of the ordinary consumer, or the reasonable expectations of a learned intermediary.
In Rogers, this court departed from Washington precedent regarding failure to warn, stating that "[i]f the manufacturer of an unavoidably unsafe product fails to provide an adequate warning, it has been negligentbut it is liable in negligence and not in strict liability." Rogers, 116 Wash.2d at 207, 802 P.2d 1346.
Initially, it is important to recognize that the plaintiff in Rogers did not claim that the warning in that case was inadequate. Thus, the adequacy of warnings under comment k was not before that court. Rogers came to this court on a certification from the federal district court. The plaintiff in that case argued that the blood product, factor IX concentrates, manufactured by the defendants, was contaminated with human immunodeficiency virus (HIV) antibodies and the plaintiff was injured as a result. The plaintiff claimed that the defendant manufacturer should be held strictly liable under Washington law because the blood shield statute (RCW 70.54.120) excluded for-profit transactions from its protection. The federal court asked:
Whether, in Washington, the doctrine of strict liability is applicable to a for-profit pharmaceutical company for injuries allegedly resulting from the processing and supplying of blood products contaminated with HIV, the virus causing AIDS, where those blood products were derived from plasma obtained from compensated donors?
Rogers, 116 Wash.2d at 197, 802 P.2d 1346 (emphasis added). At that time, Washington's blood shield statute provided immunity from strict liability for individuals and corporations dealing in blood products. The statute expressly provided, however, that its protection did not extend to "any transaction in which the donor receives compensation." RCW 70.54.120. The parties agreed that the defendants in Rogers compensated their donors. The plaintiffs argued that because the defendants compensated donors, and thus fell outside the immunity of RCW 70.54.120, the defendants were held to answer in strict liability.
To answer the certified question, the court first considered whether the Legislature intended *71 the manufacturer of blood products which compensated its donors be held to a strict liability standard by excluding compensated donor transactions from protection under RCW 70.54.120. The Rogers court declined to make a distinction based on for-profit status and concluded that exclusion of for-profit transactions from the statute did not dictate a strict liability standard be applied to the defendant manufacturer. The court then went on to discuss whether the manufacturer could be held strictly liable under the common law. In its analysis under common law, the Rogers court acknowledged that Washington had adopted a theory of strict liability as applied to manufacturers in Ulmer, 75 Wash.2d 522, 452 P.2d 729. It then noted that exceptions had been made to this rule and specifically adopted comment k of the Restatement (Second) of Torts § 402A as the "applicable rule in Washington for blood and blood products." Rogers, 116 Wash.2d at 197, 802 P.2d 1346.
The claim by the plaintiff in Rogers related to the defect in the product, contamination, not to a failure to warn of the risk of contamination. By its terms, comment k rejects a strict liability standard for claims of design defect when the product is accompanied by adequate warnings and the product is free of manufacturing flaw. Although the plaintiff argued neither manufacturing flaw nor inadequate warnings, Rogers nevertheless went on to make additional gratuitous observations regarding any possible issues based on the defendants' duty to warn stating:
It might be argued that, in order fully to resolve the question whether strict liability applies, we must also resolve whether defendants met their duty to warn under comment k. The argument would be that if defendants did not qualify for the comment k exception, then the overall rulestrict liabilitywould apply.
Rogers, 116 Wash.2d at 207, 802 P.2d 1346 (emphasis added). Justice Callow, writing for the majority, was correctit could have been argued that the failure to adequately warn would deprive the manufacturer of comment k protection and thus render it strictly liable under the common law. It is clear, however, that neither the question nor the argument were before the court in Rogers. As the Rogers court said "as plaintiffs' negligence claims are still before the federal court, any issues regarding defendants' duty to warn should be resolved by that court." Id. Contrary to the conclusion reached by the Court of Appeals and the majority, Rogers is simply not binding authority on the issues in this case.
More importantly, whether dicta or not, Rogers wrongly applied comment k and Washington law. Exemption from strict liability under comment k is expressly limited to products accompanied by adequate warnings. Stated another wayadequate warnings are a predicate to application of comment k by the express terms of the comment. When the Rogers court eliminated the requirement of adequate warnings as a prerequisite to immunity from strict liability, it is unclear whether the court intended to read the express requirement of adequate warnings out of comment k or whether the court was reversing Washington case law, beginning with Little v. PPG Industries, which established strict liability as the standard for failure to warn. In either case, Rogers went astray.
To understand where Rogers went wrong it is helpful to recognize that the source of the Rogers pronouncement was Brown v. Superior Court, 44 Cal.3d 1049, 751 P.2d 470, 245 Cal.Rptr. 412 (1988). In the passage quoted by Rogers from the Brown decision the California Supreme Court noted that
there is a general consensus that, although [comment k] purports to explain the strict liability doctrine, in fact the principle it states is based on negligence. That is, comment k would impose liability on a drug manufacturer only if it failed to warn of a defect of which it either knew or should have known.
Rogers, 116 Wash.2d at 207, 802 P.2d 1346 (quoting Brown, 44 Cal.3d at 1059, 245 Cal. Rptr. 412, 751 P.2d 470). Since Brown was decided, the California Supreme Court has had occasion to explain its holding in that case. In Anderson v. Owens-Corning Fiberglas Corp., 53 Cal.3d 987, 810 P.2d 549, 281 Cal.Rptr. 528 (1991) the California high court explained:
The procedural posture of Brown ... required us to address ... the plaintiff's contention that a manufacturer's strict liability *72 for failure to warn should extend to "unknowable" risks of harm. The trial court had ruled before trial that the defendants could not be held strictly liable for an alleged design defect in the drug at issue but could be held strictly liable for their failure to warn of the drug's known or knowable side effects. This pretrial ruling in Brown, insofar as it recognized strict liability for failure to warn of known or knowable side effects, was not questioned by the plaintiff on appeal. Instead, the plaintiff wanted the appellate court to extend the ruling to "unknowable" risks. The Court of Appeal affirmed the trial court's ruling. We did the same.
Id. at 999, 281 Cal.Rptr. 528, 810 P.2d 549 (emphasis added). Moreover, the Anderson court included the Brown decision in its list of cases which supported its conclusion that "knowledge [or knowability] is also a component of strict liability for failure to warn." Id. at 1000, 281 Cal.Rptr. 528, 810 P.2d 549. Thus, the court made clear in Anderson that Brown did not abrogate a rule of strict liability for failure to warn.
The rule articulated by the California Supreme Court in Anderson is followed by many courts which have considered whether comment k alters the rule of strict liability under § 402A when the claim is failing to adequately warn. See Jackson v. Nestle-Beich, Inc., 147 Ill.2d 408, 168 Ill.Dec. 147, 589 N.E.2d 547 (1992) (unavoidably unsafe product subject to strict liability due to absence of warning of the unavoidable risk of injury posed by product); Niemiera v. Schneider, 114 N.J. 550, 555 A.2d 1112 (1989) (comment k immunity does not eliminate strict liability for failure to provide a proper warning); Borel v. Fibreboard Paper Prods. Corp., 493 F.2d 1076 (5th Cir.1973) ( court correctly instructed on strict liability in failure to warn claim involving unavoidably unsafe product under comment k), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); Alman Bros. Farms & Feed Mill, Inc. v. Diamond Lab., Inc., 437 F.2d 1295 (5th Cir., 1971) (failure to give complete disclosure of the existence and extent of risk involved in use of product deprived product of comment k exemption); Filler v. Rayex Corp. 435 F.2d 336 (7th Cir., 1970) (exception to strict liability under comment k applies only when product accompanied by proper warning); Davis v. Wyeth Lab., Inc., 399 F.2d 121 (9th Cir.1968) (failure to warn of risk that reasonable consumer would want to know rendered warning defective under comment k and product subject to strict liability); but see Hahn v. Richter, 543 Pa. 558, 673 A.2d 888 (1996) (reading comment j and k together to hold manufacturer liable only in negligence for failure to warn).
A few courts have found that where liability is based on failure to warn, strict liability and negligence are equivalent. See Martin v. Hacker, 83 N.Y.2d 1, 628 N.E.2d 1308, 607 N.Y.S.2d 598 (1993); Savina v. Sterling Drug, Inc., 247 Kan. 105, 795 P.2d 915, 928 (1990). As the court in Savina explained,
in all warning caseseven if the plaintiff or the court claims to analyze failure to warn or inadequacy of warning in the context of a strict products liability claimthe tests actually applied condition imposition of liability on the defendant's having actually or constructively known of the risk that triggers the warning.
Savina, 247 Kan. at 121-22, 795 P.2d 915 (quoting Johnson v. American Cyanamid Co., 239 Kan. 279, 286-87, 718 P.2d 1318 (1986)).
While it may be true that there is an aspect of negligence in a failure to warn claim, i.e., whether the risks were known or knowable, there is a crucial departure in a failure to warn claim from a traditional negligent standard: the reasonableness of the manufacturer's conduct in deciding whether to warn is immaterial under a strict liability theory. The California Supreme Court succinctly stated the difference between negligent failure to warn and strict liability failure to warn:
Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care.... Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct. The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and *73 medical knowledge available at the time of manufacture and distribution. Thus, in strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial.
Anderson, 53 Cal.3d at 1002-03, 281 Cal. Rptr. 528, 810 P.2d 549.
In addition to the express language of comment k requiring adequate warnings as a prerequisite to immunity from strict liability, the theoretical underpinnings of that exclusion support a rule of strict liability for defects in warnings. Considering the usefulness of certain products which are unavoidably unsafe by nature, relieving the manufacturer of such products from strict liability, which would otherwise attach to a product which cannot be made safe even for its intended use, may be justified. The risk of using a product which cannot be made safe then shifts to the user. When the risk of use is shifted, however, it must be a risk which is fully appreciated. The consumer is in no position to know these risks and thus, comment k requires the manufacturer to adequately warn and properly manufacture such products to justify the reduced liability for placing an unavoidably unsafe product into the stream of commerce. As the court in Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076 (5th Cir., 1973) stated:
[T]he decision to market [an unavoidably unsafe] product requires a balancing of the product's utility against its known or foreseeable danger. But, as comment k makes clear, even when such balancing leads to the conclusion that marketing is justified, the seller still has a responsibility to inform the user or consumer of the risk of harm. The failure to give adequate warnings in these circumstances renders the product unreasonably dangerous. The rationale for this rule is that the user or consumer is entitled to make his own choice as to whether the product's utility or benefits justify exposing himself to the risk of harm. Thus, a true choice situation arises, and a duty to warn attaches, whenever a reasonable man would want to be informed of the risk in order to decide whether to expose himself to it.

Id. at 1089 (emphasis added).
In the present case, Key Pharmaceuticals did not deny that it knew about the relationship between fevers or viral illnesses but argued that the information was not clinically reliable and that it would have been irresponsible for the drug company to warn of risks that were not proved to be legitimate risks. Considering the defendant's admissions, the proper question for the jury was whether the warning given by defendant Key Pharmaceuticals was adequate, measured by the reasonable expectations of a consumer or learned intermediary. Instead, the jury was instructed to determine the reasonableness of the defendant's failure to warn. Under Washington law the reasonableness of the defendant's action is irrelevant. If the warning was not adequate then Key Pharmaceuticals is liable. The Court of Appeals should be reversed and this case remanded for a new trial. The jury should be instructed that the adequacy of the manufacturer's warnings are to be measured under Washington's strict liability test set forth in Little, 92 Wash.2d 118, 594 P.2d 911, and its progeny.
JOHNSON, ALEXANDER and SANDERS, JJ., concur.
NOTES
[1] Devan Young has been represented by his guardians ad litem during the course of this lawsuit. The guardians and Devan are referred to collectively herein as Plaintiff or as Devan Young.
[2] At trial Key Pharmaceuticals did not admit that Devan's seizure was caused by theophylline toxicity induced by a viral illness or fever. Instead, Key pointed to allegedly inconsistent administration of theophylline, inadequate monitoring of Devan's condition and a family history of seizures. The jury did not reach the issue of proximate cause because it found Key was not negligent.
[3] Plaintiff Young attempts to raise an additional issue in his supplemental brief to this court. Plaintiff did not raise this issue in its answer to the petition for review and this court did not accept it for review. We therefore do not consider it. RAP 13.7(b).
[1] Rather than cite to the Court of Appeals decision, however, I refer to the majority as I discuss my disagreements with the Court of Appeals analysis of that issue.